**James Houston TRAYLOR, Appellant,**

v.

**STATE of Indiana, Appellee.**

**No. 880S354.**

Supreme Court of Indiana.

May 27, 1981.

Glenn A. Grampp, Lopp, Lopp & Grampp, Evansville, for appellant.

Linley E. Pearson, Atty. Gen., Kathleen G. Lucas, Deputy Atty. Gen., Indianapolis, for appellee.

PIVARNIK, Justice.

On January 16, 1980, defendant-appellant James Houston Traylor was found guilty by a jury of attempted murder, a class A felony, and of being an habitual offender. On February 15, 1980, the trial court sentenced the appellant to serve thirty years on his conviction for attempted murder and thirty years on his conviction for being an habitual offender under Count II of the charging information. The sentences were ordered to be served consecutively.

Appellant raises three issues for our review in this appeal, concerning (1) final instruction given to the jury by the court defining the elements of the defense of self-defense, (2) admission by the trial court of documentary evidence offered by the State, and (3) constitutionality of the habitual criminal statute Ind.Code § 35–50–2–8 (Burns Repl.).

On November 3, 1978, Nelson Kizer entered a neighborhood tavern in Evansville, Indiana, at approximately 9:00 p. m. At approximately 11:00 Kizer was approached by defendant James Traylor and Danny Hajek and was asked if he wanted to play cards with them. Kizer agreed. During the card game Kizer was consistently losing and at one point he saw a card passed under the table. Kizer became angry and said a few words and the game ceased, after which he went back to the bar. Traylor and Hajek came to the bar and an argument ensued over the cheating situation. Traylor and Hajek refused to return Kizer's money, and they then left the bar. Kizer later left the tavern to go home and all of the parties met in the parking lot. The evidence was that this meeting was not intentional. An argument began and Kizer pushed Traylor. Traylor then pulled out a gun and fired it at Kizer's chest four times. Kizer was hospitalized for ten to twelve days, three or four of which were spent in the intensive care unit. The evidence was that Kizer was not armed at the time, nor did he make any threats to Traylor at the time he pushed him.

I.

Among the final instructions the trial court gave State's tendered Instruction IV, which was as follows:

"SELF–DEFENSE

"Where one has taken the life of another human being, and thereafter contends that he did so in self-defense, he can only be successful in his contention if:

1. He acted without fault,

2. He was in a place where he had a right to be, and

3. He was in real danger of death or great bodily harm, or in such apparent danger as caused him in good faith to fear death or great bodily harm."

Appellant contends that the court erred in including in its definition of the elements of self-defense the specification that he must show he acted without fault. It is his contention that fault is a criteria to be considered only when the defendant instigates the combat. We do not agree. The question of whether a person is justified in using deadly force to defend himself and to prevent serious bodily harm to himself is one for the trier of fact to be determined by consideration of all the facts bearing on that issue. *Cammack v. State,* (1970) 254 Ind. 637, 261 N.E.2d 862; *Lytle v. State,* (1968) 251 Ind. 413, 241 N.E.2d 366; *Swift v. State,* (1961) 242 Ind. 87, 176 N.E.2d 117. The evidence here is that in the argument in the parking lot Kizer shoved the defendant one time, but he made no threats of any type of physical harm to the defendant. Further, the evidence showed that Kizer was unarmed and alone against Traylor and his companion, Danny Hajek. It was within the province of the jury to examine all of the facts from the standpoint of the defendant, including the fact that Kizer was coming toward the defendant to shove him again and to determine whether or not that placed defendant in such peril of death or great bodily harm that he was justified in using the deadly force that he did. The jury had sufficient facts before it to determine that defendant was not justified in using the deadly force that he did, and we will not substitute our judgment for theirs in questioning that verdict. The force used to repel an attack must be reasonable and may be used only in the belief that such degree of force is necessary to defend oneself. When one is assaulted in a manner that does not appear to threaten great bodily harm, he may not purposely kill in self-defense. *Loyd v. State,* (1980) Ind., 398 N.E.2d 1260–1264; *Johnson v. State,* (1980) Ind., 409 N.E.2d 621.

It has long been established in Indiana that the standards for the use of self-defense are that the defendant must have been in a place where he had the right to be, acted without fault and in good faith believed himself to be in real danger of death or great bodily harm. *Loyd v. State,*

*supra; Johnson v. State, supra; Berry v. State,* (1978) 268 Ind. 432, 376 N.E.2d 808; *Hemphill v. State,* (1979) Ind., 387 N.E.2d 1324; *Hoover v. State,* (1978) 268 Ind. 566, 376 N.E.2d 1152; *McFarland v. State,* (1979) Ind., 390 N.E.2d 989.

There is no error in the court's including that one must show 'he acted without fault' in its definition of the elements of self-defense.

## II.

Count II of the charging information alleged the appellant to be an habitual criminal in violation of Ind.Code § 35–50–2–8 (Burns 1979 Repl.). After appellant was found guilty of the charge under Count I, the issues under Count II were presented to the jury in a bifurcated manner. At this point the State offered exhibits 7A, 7B, 8A, 8B, 9A and 9B, which were records of corrections institutions and courts, showing prior convictions of the appellant. It is appellant's contention that these exhibits were hearsay and not proper evidence. It is the State's contention that the exhibits were properly authenticated pursuant to the provisions of Ind.Code § 34–1–17–7 and our Ind.R.Tr.P. 44(A)(1) so that they were admissible as official records of the courts and correctional institutions from which they came. *Eldridge v. State,* (1977) 266 Ind. 134, 361 N.E.2d 155; *Wright v. State,* (1977) 266 Ind. 327, 363 N.E.2d 1221; *Johnson v. State,* (1975) 165 Ind.App. 636, 333 N.E.2d 307.

Ind.Code § 34–1–17–7 (Burns 1973) provides as follows:

"Exemplifications or copies of records, and records of deeds and other instruments, or of office books or parts thereof, and official bonds which are kept in any public office in this state, shall be proved or admitted as legal evidence in any court or office in this state, by the attestation of the keeper of said records, or books, deeds or other instruments, or official bonds, that the same are true and complete copies of the records, bonds, instruments or books, or parts thereof, in his

custody, and the seal of office of said keeper thereto annexed if there be a seal, and if there be no official seal, there shall be attached to such attestation, the certificate of the clerk, and the seal of the circuit or superior court of the proper county where such keeper resides, that such attestation is made by the proper officer."

The trial court found that all of these exhibits met the qualifications set out by the above statute and the record substantiates this finding. Appellant does not deny that this is true. His claim seems to be that the court did not give these reasons for allowing these exhibits into evidence since they qualified as exceptions to the hearsay rule. Apparently appellant feels that the court must expressly state his reasons for finding the exhibits admissible for them to be admissible for those express reasons. The evidence shows there was a brief discussion by the court with counsel about the above statute and that he expressly examined the exhibits to determine that they were certified and contained the seals of the offices of those so certifying. The exhibits therefore appear to have been properly admitted, and the fact that the trial judge did not expressly state his legal reasons for admitting them will not invalidate them. In addition, as the State points out, there was other evidence submitted by the State, certified by the keeper of records at the Indiana Reformatory, containing fingerprint evidence of appellant, photographs of him and commitment papers, introduced through an authorized prison official, which proved the same prior convictions as did these exhibits. Appellant does not question any of this evidence in this appeal. We find no error in the admission of these exhibits.

### III.

Finally, appellant contends that the habitual criminal statute, Ind.Code § 35–50–2–8 (Burns 1979 Repl.) imposes cruel and unusual punishment in contravention of Art. I, § 16 of the Indiana Constitution and the Eighth and Fourteenth Amendments to the United States Constitution. He claims there is no uniform application of this statute across this State nor is there any guarantee that there is a uniform application of it within the same county since its application is not mandatory but is left to the discretion of the county prosecuting attorney. Appellant also claims that the statute is constitutionally infirm as it purports to punish him as a result of a status which he holds, that of an habitual offender, rather than commission of a crime.

We have already decided these issues in prior opinions and have found that our habitual offender statute is not in contravention of Art. I, § 16 of the Indiana Constitution and the Eighth and Fourteenth Amendments to the United States Constitution. *Norris v. State,* (1979) Ind., 394 N.E.2d 144–150; *McMahan v. State,* (1978) 269 Ind. 566, 382 N.E.2d 154. In reaffirming our position in *Norris* and *McMahan,* we said in *Duncan v. State,* (1980) Ind., 409 N.E.2d 597:

> "We there stated and here affirm the rule that a sentence imposed pursuant to a proper habitual criminal finding is neither disproportionate nor cruel and unusual."

Judgment affirmed.

GIVAN, C. J., and DeBRULER, HUNTER and PRENTICE, JJ., concur.