Steven A. MERS, Appellant
(Defendant Below),

v.

STATE of Indiana, Appellee
(Plaintiff Below).

No. 1283S431.

Supreme Court of Indiana.

Aug. 8, 1986.

Susan K. Carpenter, Public Defender, David P. Freund, Deputy Public Defender, Indianapolis, for appellant.

Linley E. Pearson, Atty. Gen., Joseph N. Stevenson, Deputy Atty. Gen., Indianapolis, for appellee.

DICKSON, Justice.

Steven A. Mers was convicted by a jury of burglary, a class C felony [1] and was also found to be a habitual offender.[2] The trial court sentenced him to the maximum term of eight (8) years imprisonment on the burglary conviction and enhanced the sentence by thirty (30) years for the habitual offender determination. This direct appeal urges that error resulted from each of the following trial court actions:

1. refusing to dismiss the habitual offender count as violative of the prohibition against double jeopardy;

2. refusing to allow evidence that defendant had been previously found not to be a habitual offender based upon the same prior felonies;

3. denying defendant permission to inform the jury of the habitual offender penalty;

4. denying defendant's motion for a continuance made shortly prior to trial;

5. failing to exclude evidence or grant a continuance upon the State's failure to fully disclose names of witnesses;

6. failing to admonish the jury regarding alleged improper statements made by the prosecutor during his closing argument; and,

7. denying defendant's motion for a directed verdict at the close of the State's evidence on the habitual offender count.

Defendant seeks reversal of the burglary conviction and the habitual offender determination and requests in the alternative a new trial or resentencing on the burglary conviction alone.

We affirm.

## ISSUE I

On February 26, 1981, defendant was convicted of theft and sentenced to three years imprisonment. On March 15, 1982, the defendant was convicted of a new offense of theft, and given a sentence of two years. These two unrelated felony convictions became the basis of a subsequent habitual criminal charge brought against defendant in conjunction with a charge of theft, a class D felony, wherein defendant was convicted of the theft, but the jury found that the defendant "is not an habitual offender" on May 5, 1983. In the case now before us, jury trial was held June 13 and 14, 1983, wherein defendant was charged in Count I with Burglary, a class C felony, and in Count II with being a habitual offender, which charge was predicated upon the same two felony convictions which were used in the previous habitual offender proceeding wherein defendant was acquitted. Defendant now asserts that the trial court erred in denying his motion to dismiss asserting that the double jeopardy provisions of the Fifth and Fourteenth Amendments to the Constitution of the United States, and Article 1, Section 14 of the Constitution of Indiana, are violated

1. Ind.Code § 35–43–2–1.

2. Ind.Code § 35–50–2–8.

when a defendant is twice placed on trial for being a habitual offender by reason of the same two prior underlying felony convictions, particularly when the first results in an acquittal.

Defendant admits that this Court has already decided this exact issue contrary to his contentions. *Durham v. State* (1984), Ind., 464 N.E.2d 321 (DeBruler and Prentice, JJ., dissenting); *Dixon v. State* (1982), Ind., 437 N.E.2d 1318 (Prentice, J., dissenting as to this issue); *Harris v. State* (1981), Ind., 427 N.E.2d 658 (Prentice and DeBruler, JJ., dissenting); *Baker v. State* (1981), Ind., 425 N.E.2d 98 (Prentice and DeBruler, JJ., dissenting). However, defendant requests that we reexamine our position and presents a cogent challenge to the underlying rationale supporting these decisions.

In *Durham*, this Court reviewed our prior decisions and summarized:

> We have consistently emphasized the unique status of the habitual offender statute and held that it does not establish a separate offense, but rather provides for the imposition of a more severe sentence for the substantive crime charged. We have explained that habitual criminality is a status for the enhancement of punishment upon the conviction of an additional, substantive crime. The purpose of the statute is to more severely penalize those persons whom prior sanctions have failed to deter from committing felonies. (Citations omitted.)

464 N.E.2d at 323–24. The *Durham* opinion also explained that "the refiled habitual offender information does not create any new offense against defendant but is a sentencing choice associated with the underlying felony charge." 464 N.E.2d at 325. Our decisions in *Dixon* and *Baker* hold that even though the underlying felonies used to enhance a defendant's sentence had been used in a prior habitual charge resulting in an acquittal, double jeopardy does not bar a habitual criminal finding "since the habitual charge is not a prosecution, but rather, a sentence enhancement...." *Dixon*, 437 at 1320. The issue was more extensively explored in

*Baker*, following decisions of the United States Supreme Court in *Ashe v. Swenson* (1970), 397 U.S. 436, 90 S.Ct. 1189, 25 L.Ed.2d 469, and *Bullington v. Missouri* (1981), 451 U.S. 430, 101 S.Ct. 1852, 68 L.Ed.2d 270.

The Fifth Amendment Double Jeopardy provision was held in *Ashe* to incorporate as a due process requirement the collateral estoppel doctrine which was described as "when an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again be litigated between the same parties in any lawsuit."

In *Bullington*, a jury in a bifurcated death penalty sentencing proceeding returned a verdict rejecting the death penalty and imposing a life sentence. After the defendant was granted a new trial on the substantive charge, the U.S. Supreme Court prohibited the state from future attempts to impose the death penalty following new trial. In applying the prohibition of double jeopardy, *Bullington* identified the following considerations: (1) the jury was presented with a choice between two alternatives and standards to guide their decision, (2) the prosecution was required to establish certain facts beyond a reasonable doubt, (3) the defendant was subjected to embarrassment, expense, ordeal, and anxiety and insecurity, with the attendant risk that the prosecution, with its superior resources, could wear down a defendant thereby leading to an erroneous result.

In the recent case of *Arizona v. Rumsey* (1984), 467 U.S. 203, 104 S.Ct. 2305, 81 L.Ed.2d 164, the United States Supreme Court, in discussing the application of *Bullington*, has emphasized the collateral estoppel aspect:

> The double jeopardy principle relevant to respondent's case is the same as that invoked in *Bullington*: an acquittal on the merits by the sole decision-maker in the proceeding is final and bars retrial on the same charge. Application of the *Bullington* principle renders respondent's death sentence a violation of the Double Jeopardy Clause because respondent's initial sentence of life imprison-

ment was undoubtedly an acquittal on the merits of the central issue in the proceeding—whether death was the appropriate punishment for respondent's offense.

467 U.S. at 211, 104 S.Ct. at 2310, 81 L.Ed.2d at 171. Both *Bullington* and *Rumsey* were discussed in *Poland v. Arizona* (1986), —— U.S. ——, 106 S.Ct. 1749, 90 L.Ed.2d 123, which emphasized that the focus of *Bullington* is whether the sentencer has decided that the prosecution has not proved its case for the death penalty and hence "acquitted" petitioner.

Following the decision of this Court in his appeal, the defendant in *Baker* sought habeas corpus relief in the federal courts. *Baker v. Duckworth*, (7th Cir.1985), 752 F.2d 302, *cert. denied,* —— U.S. ——, 105 S.Ct. 3483, 87 L.Ed.2d 618 rejected both general double jeopardy and collateral estoppel arguments:

> In this case, unlike *Bullington,* two independent juries considered Baker's prior criminal record in sentencing him for two unrelated thefts. Under these circumstances, this court cannot find that the first jury's decision not to enhance Baker's first theft sentence operated as an acquittal of the habitual offender status with regard to a subsequent, and distinct theft.

752 F.2d at 305. Responding further to Baker's argument that the first jury's failure to declare him a habitual offender amounted to collateral estoppel, the court disagreed:

> First, this court cannot ascertain with certainty the basis for the first jury's refusal to declare petitioner an habitual offender. The jury may have decided that the prosecution failed to prove Baker's previous convictions beyond a reasonable doubt, as required by statute. [Citation omitted.] Alternatively, *the jury may have decided that even though the prosecution had proved Baker's prior convictions beyond a reasonable doubt, Baker did not deserve an enhanced sentence.* (Emphasis supplied.)

752 F.2d at 306.

In the instant case, defendant urges that the *Bullington* factors should apply to habitual offender determinations, and argues that the majority opinion in *Baker* was incorrect in its discussion of the "ultimate issue of fact" in a habitual offender proceeding. In *Baker,* we stated:

> However, the finding that a defendant is or is not an habitual offender is not an "ultimate issue of fact" in the sense discussed in *Ashe.* Only the fact of the various convictions, and not the facts underlying those convictions, is determinative of a defendant's habitual offender status.

425 N.E.2d at 101. Defendant urges that the "ultimate issue" determined by his prior "acquittal" was whether he is a habitual offender. We agree in part, but would carry the analysis further. In the prior habitual offender proceeding, the jury had just found the defendant guilty of class D theft. In the totality of said conviction coupled with the State's contention that defendant had previously been convicted of two unrelated felonies, the jury declined to find defendant to be a habitual offender. However, when the next jury found defendant guilty of class C burglary, they determined that this conviction, coupled with proof that defendant had been convicted of the two prior felonies, warranted a finding of habitual offender status.

While the habitual offender phase of the proceeding focuses upon the existence of two prior unrelated felony convictions, prerequisite to this phase is a conviction for the primary underlying felony. A person cannot be found to be a habitual offender upon merely two felony convictions. There must be three. It is from this group of three particular convictions that a jury may determine the "ultimate issue of fact"—whether, based on these three felonies, defendant's sentencing status should be that of a habitual offender.

The protections afforded by the Double Jeopardy Clauses of the State and

Federal constitutions, including the collateral estoppel component, do not preclude the determination that defendant is a habitual offender following convictions for three felonies, where a prior jury declined to declare him a habitual offender based on conviction of a different group of three felonies, two of which were identical to the convictions considered in the later proceeding. Furthermore, we reaffirm our previous decisions which emphasized that the habitual offender statute does not create a separate crime, but merely authorizes the enhancement of sentence.

For these reasons, we find no error in the trial court's denial of defendants motion to dismiss the habitual offender count on grounds of double jeopardy.

## ISSUE II

Defendant contends that the trial court erred by excluding evidence that he was found not to be a habitual offender in the earlier proceeding which alleged the same two prior felony convictions as the present case. The State filed its motion in limine prior to trial and sought to preclude any direct or indirect reference to the earlier habitual offender hearing and the introduction of any evidence related to it. The trial court granted this motion prior to the habitual offender phase of the trial. Defense counsel sought admission of this evidence on relevancy and collateral estoppel grounds. The trial court relied on *Baker* and denied the questions and excluded exhibits. On appeal, defendant emphasizes his relevancy argument, but concedes that he has not found supporting authority.

■ Relevance is the logical tendency to prove a material fact. Evidence, otherwise admissible, may be excluded if its probative value is substantially outweighed by its potential to prejudice or confuse the jury. *Downs v. State* (1985), Ind., 482 N.E.2d 716, 718. A trial court has broad discretion in ruling on the relevancy of evidence in a criminal proceeding. *Harris v. State* (1985), Ind., 481 N.E.2d 382, 386.

■ Consistent with our discussion of Issue I above, we find that the previous habitual offender outcome was simply not relevant to the present case. The prior determination merely established that the earlier jury declined to find that defendant, at that time, should be sentenced as a habitual offender in the context of the three felony convictions then existing. The present habitual offender determination included proof of two of the prior felony convictions, but the jury was now making the habitual offender determination in the context of an additional, new, and separate additional felony conviction.

The trial court correctly excluded the evidence.

## ISSUE III

Defendant contends that the trial court erred in preventing the defendant from informing the jury as to the length of enhanced imprisonment applicable to a habitual offender. Defendant concedes that this issue had been repeatedly decided to his detriment. *Belcher v. State* (1983), Ind., 453 N.E.2d 214, 218; *Hill v. State* (1983), Ind., 452 N.E.2d 932, 933; *Harrington v. State* (1981), Ind., 421 N.E.2d 1113, 1114–1115. In *Harrington,* the Court said:

Defendant also maintains the trial court erred when it granted the state's motion *in limine,* thereby prohibiting the parties from indicating to the jury that a thirty-year sentence is imposed on a person found to be an habitual offender. He asserts that the prohibition precluded the jury from intelligently exercising its constitutional right to determine the law, as it was instructed in accordance with Article 1, Section 19 of the Indiana Constitution; had the jury been informed of the thirty-year sentence triggered by an habitual offender finding, it might have rejected the habitual offender charge on the basis of his young age, defendant maintains.

This contention has been rejected by this Court on numerous occasions. *Bailey v. State,* (1980) [274 Ind. 318] Ind., 412 N.E.2d 56; *Craig v. State,* (1979) [272

Ind. 385] Ind., 398 N.E.2d 658; *Drake v. State*, (1979) Ind., [272 Ind. 302] 397 N.E.2d 600. Those decisions were predicated on the conclusions that such a prohibition does not violate fundamental fairness, that limitations exist on the jury's right to determine the law, and that juries generally have no responsibility to assess the penalty which should follow from a guilty verdict.

421 N.E.2d at 1114–1115. Defendant requests that we reexamine this view after considering the rationale of *Brewer v. State* (1981), 275 Ind. 338, 417 N.E.2d 889, (*cert. denied* 1982), 458 U.S. 1122, 102 S.Ct. 3510, 73 L.Ed.2d 1384. In *Brewer*, this Court held it was proper to advise a jury as to when a murder defendant would be eligible for parole. Capital punishment and the application of our death penalty statute, Ind.Code § 35–50–2–9, were at issue in *Brewer.*

Although we have condemned arguments and instructions that invite or tempt the jury to consider the ultimate sentence likely to be served, [citations omitted], our concern has been with cases where there was no need for the jury to have such information, because, under the law, they were not concerned with sentencing. Imparting such knowledge, therefore, could not be beneficial, and the potential for polluting the guilt determination was present. We are not confronted with that problem, however, in the case before us. Not only had the guilt determination been made and thus could not be influenced, but also there was a definite need for the jury to have such information.

Notwithstanding that the sentence determination by the jury is not binding upon the judge, we do not regard it as a mere formality having no substantive value. If we did, error if any, in such regard could not be other than harmless. On the contrary, the recommendation of the jury is a very valuable contribution to the process, in that it comes from a group representative of the defendant's peers, who are likely to reflect, collectively, the standards of the community. The ultimate determination cannot be made in a vacuum. Hence recommendations, if any are to have relevance, must be arrived at in the light of available alternatives. Given the task of the jury at this stage of the hearing, it is altogether proper that they be fully aware of the consequences of a prison sentence as well as the consequences of a death sentence.

417 N.E.2d at 908–909. While there are significant similarities between the bifurcated habitual offender and death penalty sentencing proceedings, we also recognize the significant differences.

In death penalty proceedings, the legislature has enacted a procedure specifically directed to elicit the jury's recommendation regarding which of two sentences should be given. They are given statutory guidelines to assist them in making this recommendation. The essence of the jury role is to address and to make a recommendation regarding the penalty for the specific crime for which the jury has just found the defendant guilty. In contrast, the statutory function of the jury in a habitual offender proceeding is merely to determine whether the defendant's sentencing status should be that of a habitual offender. Once this status determination is made, the sentence to be imposed is fixed by the legislature. The jury has no discretion, nor are they called upon to make a recommendation thereon. Our legislature has determined that all persons found to be habitual offenders shall receive a specific sentence enhancement, with limited discretion assigned to the judge, not the jury. This is significantly unlike the death penalty proceeding wherein the jury is asked to give its recommendation about the specific penalty to be given a particular defendant given the circumstances of the particular case which has just been tried before them.

Because of these distinctions, we decline defendant's invitation to apply the rationale of *Brewer* to habitual offender proceedings.

## ISSUE IV

The trial court had on February 2, 1983, scheduled the trial date of June 13, 1983. On June 2, 1983, defendant moved for a continuance on the grounds that he was faced with two felony trials beginning one week apart. In an unrelated case, he was charged with theft and with being a habitual offender. Pursuant to his motion for speedy trial in the latter case, jury trial was set to begin June 20, 1983. Defendant had been aware of the June 20 trial date at least since May 6, 1983.

In response to defendant's motion for continuance, the trial court conducted a hearing, including testimony from the defendant and argument of counsel. Defendant was represented by separate attorneys in the two cases, John B. Milford in the present case, and Bruce McLane in the case then pending for trial in Grant Circuit Court commencing June 20. At the hearing upon defendant's motion for continuance, the defendant's testimony included the following dialogue:

Q. Now, is there any reason why Mr. Milford cannot prepare for this case and Mr. McLane can prepare for the other one?

A. Well, it's like this here, you know. I'm not saying that Mr. Milford ain't prepared. I'm saying that I ain't prepared. I'm the one that's got to sit up here and explain to the jury that I'm not a habitual criminal. I'm not prepared for that. He may be. I'm not.

The defendant also indicated his desire to request people from Kentucky, including his mother and father, to testify as character witnesses, particularly regarding the habitual criminal offender charge. Defendant contended these witnesses were unavailable:

What I'm saying is they work. Alright. That's ... tobacco more or less type land, and right now they're pulling plants and they ain't got time to come up here and do that. A continuance, they might. Now, they can't.

The granting of requests for continuances based, as here, on non-statutory grounds, are within the discretion of the trial court. *Downer v. State* (1982), Ind., 429 N.E.2d 953. Denial of the motion is reversible error only upon abuse of discretion and a showing from the record that the defendant was prejudiced. *Dillon v. State* (1983), Ind., 448 N.E.2d 21; *Maier v. State* (1982), Ind., 437 N.E.2d 448.

■ We do not see any abuse of discretion in denying defendant's motion for continuance. This trial date, including the habitual offender count, had been set for well over three months, affording the defendant a full opportunity to arrange for the presence of, or secure testimony from, his character witnesses from Kentucky. Furthermore, we are not persuaded by defendant's contention that he was prejudiced by "having to prepare himself for back-to-back trials on major felony charges scheduled only one week apart." There was no showing that his counsel were unprepared. To the extent that defendant perceived a problem to exist because of the temporal proximity of the two trials, it was created by his own actions resulting in the setting of the second trial. Defendant's preference against seeking a continuance in the second trial is not necessarily a compelling basis to justify his obtaining a continuance in the first trial. Finding no abuse of discretion, there is no error upon this issue.

## ISSUE V

Defendant contends that the court erred in refusing to grant a continuance or to exclude testimony of three witnesses disclosed by the State shortly before the commencement of trial. Several months earlier, the defendant had filed a motion for discovery requesting, *inter alia,* the "names and addresses of persons who will be called as witnesses." The State's response included "a list of the lay and expert witnesses whom the State now knows that it may call at hearing or trial in this cause." On Friday, June 10, 1983, with the trial scheduled to begin the following Monday, the State filed a list of two additional witnesses. The following Monday morn-

ing, before trial began, defense counsel made timely objection and moved to exclude their testimony.

■ In cases of violation of discovery orders, a continuance has been held as a proper remedy unless the State's action is so misleading as to demonstrate such bad faith that exclusion of the evidence is necessary to protect the defendant's fair trial rights. *Crenshaw v. State* (1982), Ind., 439 N.E.2d 620. However, the determination of whether there has been substantial discovery noncompliance is a matter for trial court discretion. *Allen v. State* (1982), Ind., 439 N.E.2d 615. Trial courts are granted wide latitude in matters concerning discovery. *Opfer v. State* (1985), Ind., 482 N.E.2d 706; *Kalady v. State* (1984), Ind., 462 N.E.2d 1299. Absent clear error and resulting prejudice, a trial court discovery ruling will not be overturned. *Opfer, supra; Wagner v. State* (1985), Ind., 474 N.E.2d 476.

■ Generally, when discoverable evidence is withheld in violation of a discovery order, the proper remedy is a continuance or exclusion of the evidence. *Bieghler v. State* (1985), Ind., 481 N.E.2d 78, (*cert. denied* 1986), — U.S. —, 106 S.Ct. 1241, 89 L.Ed.2d 349; *Coppock v. State* (1985), Ind., 480 N.E.2d 941, 944, *Murray v. State* (1985), Ind., 479 N.E.2d 1283, 1287. Exclusion is usually granted only if the State has blatantly and intentionally failed to provide discovery or if the exclusion is necessary to avoid substantial prejudice to the defendant. *Bieghler, supra, Coppock, supra.* Defendant has not alleged or shown blatant or intentional conduct by the State, nor has he demonstrated how he was surprised or prejudiced by the witnesses' testimony. When defense counsel requested exclusion, he conceded that the prosecution's case would not rise or fall on the challenged evidence.

■ This Court takes a dim view of the State's use of witnesses not disclosed in response to a proper discovery request, and without seeking leave of court or providing a reasonable explanation for this failure.

To the extent that the trial court may have erred in permitting the witnesses to testify, we note that the defendant did not seek a continuance, presumably because of the limited impact of the expected testimony from these two witnesses. Their testimony was directed primarily to the identification of photographs and describing the initial dispatch sending officers to the scene of the offense. From the facts before us, we find harmless any error in refusing to exclude the testimony of the witnesses.

ISSUE VI

■ Defendant claims the trial court should have admonished the jury, after the prosecutor made allegedly improper statements defining "breaking" for purposes of the burglary statute. During his closing argument, the prosecutor stated:

> Now, this term "breaking," this is a confusing term. O.K. When we talk about breaking, it comes from the English common law. It goes back way over two hundred years. We're talking about an old common law phrase called breaking the close, and that meant *to enter into a structure or into a geographical area in which you were not permitted.* Now, that is what we mean by breaking. (Appellant's emphasis.)

After the court denied defense counsel's request for admonishment, the prosecutor further stated:

> The breaking of the close means the unauthorized entry into an area in which you are not permitted. It does not require a physical shattering or breaking of any tangible object. For instance, if you leave your home and you forget to lock the front door, O.K.? I am a burglar. I come to your home and I twist on the door knob and I open the door knob and I go in. I have broken the close.

Although the prosecutor's initial remark taken out of context seems to misstate the law, particularly when it is read in conjunction with his later statement, the description of breaking is not misleading. *Lamb v. State* (1984), Ind., 462 N.E.2d 1025; *Howard v. State* (1982), Ind., 433 N.E.2d

753, 756. In any case, the evidence reveals that defendant entered the structure by kicking in panels and breaking glass.

Conduct of the final argument is within the sound discretion of the trial court. *Whitacre v. State* (1980), 274 Ind. 554, 412 N.E.2d 1202. We do not find an abuse of discretion here.

### ISSUE VII

Defendant argues that the trial court erred in denying his motion for a directed verdict at the close of the State's evidence in the habitual offender phase. He concedes that he has waived this issue by presenting evidence on his own behalf, *e.g., Wilburn v. State* (1982), Ind., 442 N.E.2d 1098, and does not demonstrate any failure in the State's evidence. Furthermore, defendant thereafter personally testified and admitted committing the prior felonies. The trial court did not err.

The judgment of the trial court is affirmed.

GIVAN, C.J., and PIVARNIK and SHEPARD, JJ., concur.

DeBRULER, J., concurs in result.