Raymond HENSLEY, Appellant,

v.

STATE of Indiana, Appellee.

No. 86S00–8603–CR–241.

Supreme Court of Indiana.

Oct. 1, 1986.

Rehearing Denied Dec. 2, 1986.

Dennis L. Woods, Fowler, for appellant.

Linley E. Pearson, Atty. Gen., Richard Albert Alford, Deputy Atty. Gen., Indianapolis, for appellee.

PIVARNIK, Justice.

Defendant-Appellant Raymond Hensley was found guilty by a jury in the Warren Circuit Court of the crime of theft and was also found to be an habitual offender. The trial court sentenced him to a term of two (2) years on the theft conviction, enhanced by thirty (30) years on the habitual offender finding, for a total term of thirty-two (32) years.

Appellant presents five issues for our consideration in this direct appeal:

1. improper sentencing in the habitual offender finding;

2. unreasonable sentence imposed;

3. sufficiency of the evidence;

4. improper verdict forms; and

5. prosecutorial misconduct.

The evidence showed that in the fall of 1984, during the night or early morning, Appellant Raymond Hensley, together with Robert Stoker and one or two other persons, went to the residence of J. Hall Crone, north of Attica, Indiana, and siphoned gasoline from a truck at that residence. The gasoline was siphoned into a can and poured into Hensley's automobile.

## I

Appellant urges us to find the trial court erred in sentencing him on Count II, Habitual Offender, pursuant to Ind.Code § 35–50–2–8. It is his position that the enactment and promulgation of Ind.Code § 35–50–2–7.1, as an ameliorative statute, requires the trial court to sentence Appellant to a lesser enhanced period. Ind.Code § 35–50–2–8 provides that all persons found to be habitual offenders are to have their sentence enhanced by a term of thirty (30) years. In 1985 the Legislature enacted Ind.Code § 35–50–2–7.1, to be effective September 1, 1985, providing that where the defendant was found guilty of a class D felony, and the unrelated prior felonies supporting the habitual offender finding were also class D felonies, lesser penalties could be given, the maximum of which would be eight (8) years. Appellant Hensley was charged on March 18, 1985 for an offense allegedly committed on or about October 26, 1984. He had prior unrelated class D felony convictions for crimes committed by him from 1978 to February, 1984. His trial commenced on September 12, 1985, and he was found to be an habitual offender on September 13, 1985, and sentenced on September 25, 1985. He now claims he should have been sentenced un-

der the newly enacted ameliorative statute, Ind.Code § 35–50–2–7.1.

§ 3 of the newly enacted statute contains the following saving clause:

"SECTION 3. (a) The addition of I.C. 35–50–2–7.1 and the amendment of I.C. 35–50–2–8 by this act do not affect any:

(1) rights or liabilities accrued;

(2) penalties incurred; or

(3) proceedings begun;

before September 1, 1985. The rights, liabilities, and proceedings are continued and punishments, penalties, or forfeitures shall be imposed and enforced under I.C. 35–50–2–8 as if this act had not been enacted.

(b) If all of the felonies that are relied upon for sentencing a person as an habitual offender under I.C. 35–50–2–8 are felonies that were committed before September 1, 1985, the felonies shall be prosecuted and remain punishable under I.C. 35–50–2–8 as if this act had not been enacted."

Indiana P.L. 328–1985, § 3.

The Legislature's intent is directly and clearly expressed. It is not uncertain or ambiguous as to its application. It excludes any felonies committed before the effective date of September 1, 1985. The Legislature's intent therefore does not require any construction or interpretation. It, in fact, places us under a duty to enforce the statute according to its obvious meaning. *Parsley v. State* (1980), 273 Ind. 46, 48, 401 N.E.2d 1360, 1361, *cert. denied* 449 U.S. 862, 101 S.Ct. 166, 66 L.Ed.2d 79. The trial court properly sentenced Appellant pursuant to the provisions of I.C. § 35–50–2–8.

## II

■ Appellant's next contention is that the sentence of thirty-two years for the offense of theft in light of the circumstances of the underlying felony and the Appellant's history, consisting of what he refers to as non-violent petty thefts, was so disproportionate to the offense that it constitutes unconstitutionally disproportionate and/or cruel and unusual punishment. Ap-

pellant concedes that, although Art. 1, § 16 of the Indiana Constitution prohibits sentencing a defendant to a penalty not proportionate to the offense, it has been held by this Court that the sentencing of an habitual offender to an enhanced sentence is not, *per se*, unconstitutional. *Davis v. State* (1985) Ind., 472 N.E.2d 922, 925; *Wells v. State* (1982), Ind., 441 N.E.2d 1366, 1368. In *Traylor v. State* (1981), Ind., 420 N.E.2d 887, 890, this Court held: "We affirm the rule that a sentence imposed pursuant to a proper habitual offender finding is neither disproportionate nor cruel and unusual." In *Rummel v. Estelle* (1980), 445 U.S. 263, 100 S.Ct. 1133, 63 L.Ed.2d 382, the United States Supreme Court affirmed the imposition of a life sentence upon Defendant Rummel under a Texas recidivist law for his having been thrice convicted of property related felonies. Defendant Rummel had been imprisoned twice following felony convictions in Texas courts for fraudulent use of a credit card and passing a forged instrument. The underlying felony for which Rummel was sentenced was felony theft for obtaining money by false pretenses. The United States Supreme Court held that the imposition of the life sentence pursuant to the recidivist statute did not constitute cruel and unusual punishment under the Eighth and Fourteenth Amendments. *Id.* at 285, 63 L.Ed.2d at 397, 100 S.Ct. at 1145.

Appellant urges us to find that his sentence is unreasonable pursuant to our rules for the appellate review of sentences. Those rules provide that we will not revise a sentence authorized by statute except where such sentence is manifestly unreasonable in light of the nature of the offense and the character of the offender. Such sentence is not manifestly unreasonable unless no reasonable person could find the sentence appropriate to the particular offense and offender for which the sentence was imposed. Rules for the Appellate Review of Sentences Rule 2. *Indiana Rules of Court,* (West,1986). Appellant's conviction was for stealing gasoline from a truck. This is a class D felony and for it he

received a term of two years imprisonment. The thirty years was an enhancement of that sentence based on the fact that Appellant had committed two other thefts going back to 1978 and as recent as 1984. Under these circumstances we cannot say that the sentence was so disproportionate that no reasonable person could find it appropriate to the particular offense and offender.

### III

Appellant claims there was insufficient evidence introduced at trial to sustain the jury's verdict finding him guilty of theft since there was not proof beyond a reasonable doubt that the gasoline was stolen from J. Hall Crone's property. We review this challenge to sufficiency as any other and that is; we do not weigh or judge credibility but rather, examine the evidence most favorable to the State together with all reasonable inferences which can be drawn therefrom. If there is substantial evidence of probative value to support the conclusion that defendant is guilty beyond a reasonable doubt, the verdict will not be set aside. *Gatewood v. State* (1982), Ind., 430 N.E.2d 781, 782. In *Williams v. State* (1983), Ind.App., 451 N.E.2d 700, 701, the Court of Appeals held: "Although the name of the owner or possessor of stolen property is a material allegation, that allegation may be proven by circumstantial evidence." This is a correct statement of the law. In the instant case, Robert Stoker testified that he, Hensley, and two other persons went to the property identified as Mr. Crone's on October 26, 1984, and committed the crime charged. Stoker identified the property by its location and by identifying pictures of it. He also identified a picture of the Ford Bronco truck that was in the driveway and from which the gasoline was taken. His testimony was supported by Sheriff James T. Brier. Brier testified over Hensley's objection that on October 26, 1984, at about 10:00 a.m., he received a telephone call from a person known to him as J. Hall Crone, who reported that gasoline had been taken from his truck parked in a shed, and from his Ford Bronco, which was sitting in front of his

home in the driveway. Crone further reported to Brier that the caps were gone from the gasoline tanks of both vehicles. This testimony was admitted by the court, " ... not to prove the matter but for the fact that the report was made and the nature of that report." Brier further testified, however, that he was personally acquainted with Crone and had known him for forty (40) years, during which time he had become familiar with Crone's property, including the Bronco truck. Brier identified, again over Hensley's objection, thirteen photographs which depicted Crone's property, including his house, garage, tool shed, another shed, the Bronco vehicle, another truck and tractor, and an automobile. These photographs were admitted over Hensley's objection. They also were used by Stoker to identify the scene. There also was testimony by Brier that Crone was known to be out of town at the time of the trial and probably did not even know the trial was going on. The Sheriff testified that no investigation was made at the time the theft was reported to him, and it was not until January 5, 1985, when Stoker gave his statement to Brier, that Brier was able to follow up on Crone's theft report made on October 26, 1984. There was, therefore, sufficient evidence here, although circumstantial, that Crone owned the gasoline that was taken. Stoker's testimony sufficiently established the residence and the vehicles from which the gasoline was taken and the inference that it was not done with the owner's permission. Even though the Sheriff's testimony concerning the details of the theft report made by Crone was not admissible, his testimony that he received a report on that date, and his identity of property, including the Bronco vehicle, as that of Crone's, was admissible and sufficiently corroborative of Stoker's testimony to justify the trier of fact in finding that element proved.

### IV

Appellant claims the trial court erred in submitting a verdict form to the jury which they returned finding him to be

an habitual offender. The verdict form provided: "We the jury find beyond a reasonable doubt that the defendant Raymond Hensley is an habitual offender in that he has the following prior convictions." This was followed by setting out each of the convictions alleged and presented to the court in the habitual offender phase. There were four such prior convictions and each of the four was set out with a blank for a "yes" or "no" from the jury. The jury marked a "yes" in all four instances. Appellant now claims this was error because it constituted a special verdict abolished by Ind.Tr.R. 49, and because it impinged upon the defendant's right to have a jury in a criminal case determine both the law and the facts pursuant to Art. 1 § 19 of the Indiana Constitution. It is Appellant's contention that the verdict form used reduced the jury to nothing more than a fact-finding panel. He contends the verdict form, if used in this manner, should also have contained findings on whether the previous offenses were unrelated and preceded the present charge. We see no shortcoming in the use of this type of verdict form. Juries are traditionally furnished verdict forms in habitual offender proceedings in which they find the defendant guilty because he has been convicted of two previous felonies. The only addition to this verdict form was that the jury specifically was asked to find whether each alleged felony had been proven. The court otherwise fully instructed the jury defining felonies and explaining to them that the felonies must be prior unrelated felonies. In Indiana the jury's function in a habitual offender proceeding is to determine whether the defendant is a habitual offender as defined by statute. *Choate v. State* (1984), Ind., 462 N.E.2d 1037, 1043. The verdict form used in this case comports with the jury's function in this regard. We find no error on this issue.

### V

Finally, Appellant claims there was prosecutorial misconduct of such a nature and extent as to deny him his right to fundamental due process of law. In reviewing a charge of prosecutorial misconduct, this Court first determines whether there was, in fact, misconduct by the prosecutor, and then considers whether that misconduct under all the circumstances placed the defendant in a position of grave peril to which he should not have been subjected. *Maldonado v. State* (1976), 265 Ind. 492, 498–499, 355 N.E.2d 843, 848. The acts complained of were: 1) remarks by the Prosecutor during *voir dire* that Appellant indicated he might call the following witnesses and then a question of the prospective jurors whether or not they were acquainted with those particular people; 2) an explanation of a clean-up statement during opening statement when no evidence was offered on the point; 3) statements in final argument by the Prosecuting Attorney explaining why there was a delay in filing charges against the defendant; 4) personally endorsing the credibility of a witness; 5) stating in the habitual phase closing argument: "You know, are we going to release him and let him go again? You know, to come back—"; and 6) filing of an habitual offender count that alleged four prior felonies. All of these objections were made at trial except the reference to the credibility of the accomplice.

It was proper for the Prosecuting Attorney to ask potential jurors of their acquaintance with potential defense witnesses. We do not see this as an improper comment on Hensley's right to present his defense as he chooses. The record reveals there was testimony at trial concerning Stoker's "clean-up" statement. Thus, the Prosecutor was entitled to explain the term "clean-up statement" in his opening statement. The State's response to Hensley's complaints about the Prosecutor's comments during final argument concerning the delay in bringing the charges, and about Stoker's credibility, is that they were made in response to comments by Hensley's counsel. During his final argument, Hensley's counsel commented that the State did, in fact, delay several months before bringing charges, and that their witness, Bob Stoker, was a bad witness, as he

was a thief and a liar. The Prosecutor commented in response that he would not bring any case before them where he thought someone was going to come into court and lie to them. He then explained the reasons for the delay in bringing the charges. The Prosecutor's responses were fair comment as they did not infer that the Prosecutor had information before him that was outside the evidence heard by the jury. Further, the comments were in response to statements on the same subject made by defense counsel during arguments. *Vanyo v. State* (1983), Ind., 450 N.E.2d 524, 527, *reh. denied.* The comment made by the Prosecutor in his final argument during the habitual offender phase also was fair comment for the same reasons. *Cheney v. State* (1985), Ind., 486 N.E.2d 508, 511. Finally, proof of more than two (2) felony convictions in a habitual offender proceeding is mere surplusage. *Golden v. State* (1985), Ind., 485 N.E.2d 51, 56. We see no prosecutorial misconduct in any of these allegations.

Finding no error, we affirm the trial court.

GIVAN, C.J., and DeBRULER, J., concur.

DICKSON, J., concurs in part and dissents in part with separate opinion in which SHEPARD, J., concurs.

DICKSON, Justice, concurring and dissenting.

I respectfully dissent with respect to Issue IV.

The form of verdict provided to the jury during the habitual offender phase was inadequate. It failed to recognize the jury's right to find that the defendant was not a habitual offender at this time, even though there may have been adequate proof of the prerequisite prior felony convictions. *Mers v. State* (1986), Ind., 496 N.E.2d 75; *Baker v. Duckworth* (7th Cir. 1985), 752 F.2d 302, 306 *cert denied,* —— U.S. ——, 105 S.Ct. 3483, 87 L.Ed.2d 618. This Court recently stated:

While the habitual offender phase of the proceeding focuses upon the existence of two prior unrelated felony convictions, prerequisite to this phase is a conviction for the primary underlying felony. A person cannot be found to be a habitual offender upon merely two felony convictions. There must be three. It is from this group of three particular convictions that a jury may determine the "ultimate issue of fact"—whether, based on these three felonies, defendant's sentencing status should be that of a habitual offender.

*Mers, supra,* 496 N.E.2d at 79.

If the legislature had intended merely that the fact of two prior unrelated felony convictions should operate to automatically, without exception, compel the habitual offender sentencing status and resulting substantial increase in term of imprisonment, it would not have been necessary to allow for the intervention of a jury. For example, mandatory consecutive sentences are required by Ind.Code § 35–50–1–2 in the event of a certain specified conviction history. The statute does not require such matters to be presented for jury evaluation.

In contrast, by permitting a jury determination of habitual offender status, the legislature elected against making the habitual offender determination to be an automatic, inevitable result of a conviction following two prior unrelated convictions. The Constitution of Indiana, Article 1, Sec. 19, provides, "[i]n all criminal cases whatever, the jury shall have the right to determine the law and the facts." Within this framework, the legislature chose to empower a jury to make the determination of whether a defendant's sentencing status is to be that of a habitual offender.

The form of verdict utilized by the trial court prevented the jury from discharging its proper function under the statutes and Constitution of Indiana.

I concur with the majority opinion on all remaining issues, and would remand for a new habitual offender proceeding.

SHEPARD, J., concurs.