Everett Leon DECKER, Appellant
(Defendant Below),

v.

STATE of Indiana, Appellee
(Plaintiff Below).

No. 79S00–8605–CR–00458.

Supreme Court of Indiana.

Sept. 26, 1988.

Susan K. Carpenter, Public Defender, Teresa D. Harper, Deputy Public Defender, Indianapolis, for appellant.

Linley E. Pearson, Atty. Gen., Jay Rodia, Deputy Atty. Gen., Indianapolis, for appellee.

PIVARNIK, Justice.

Defendant–Appellant Everett Leon Decker was charged with one count of Burglary, a Class C felony, and one count of Theft, a Class D felony. He was tried by a jury and found guilty on the theft charge only. He was sentenced to two (2) years, and this sentence was enhanced by an additional thirty (30) years for an habitual offender finding. Decker raises the following issues on direct appeal:

1. trial court error in refusing his tendered instructions 8 and 9;
2. denial of his Motion for Discharge pursuant to Criminal Rule 4(C);
3. denial of his Motion to Suppress;
4. error in sentencing;
5. error in giving State's final instruction 3;
6. error in allowing a State's witness to testify as an expert and give opinion evidence of fingerprint identification; and
7. sufficiency of the evidence.

The facts most favorable to the verdict show that on October 20, 1984 a horticulture barn on the Purdue University campus was broken into and entered. A chain saw, Weedeater, and gas cans, all University property, were taken. Investigating officers observed a black Cadillac, which had its lights extinguished, quickly leaving the area. The officers stopped the vehicle and arrested Stephen Planchon and Kenny Smith.

Earlier in the evening, Decker had taken Smith to Horticulture Park and dropped him off near a row of hedges. Decker left and returned some time later. Smith was waiting, and asked Decker for the keys to his trunk. Decker heard Smith putting what sounded like gasoline cans into the trunk. Next they drove to a Mr. Huff's house and Smith sold the Weedeater and chain saw to Huff. Decker was present during this transaction. Afterwards Planchon, who also was present during the sale,

Smith, and Decker went to a bar. Apparently during this time Planchon and Smith discussed how they could obtain more machinery. Decker refused to carry any machinery in his trunk, but did agree to show the men where Horticulture Park was located. He did so, but he realized the police were nearby, and left quickly. He warned Planchon and Smith to "get out of here." Smith and Planchon were then arrested.

At approximately 7:00 a.m. the next morning, four police officers arrived at Decker's residence. The officers requested Decker speak with them outside, and informed him of their investigation. They told Decker Smith had been arrested and had stated he was with Decker the night before, and that they were attempting to verify Smith's alibi. They did not advise him of his *Miranda* rights or arrest him. Decker told the officers where he was with Smith, and upon request, retrieved his car keys from his home and opened the trunk of the car. Two gasoline cans were found. Again at the officers' request, Decker went to the police station at 8:30 a.m. There he waived his *Miranda* rights, made a statement, and was arrested for burglary and theft.

I

The first issue Decker raises on appeal is trial court error in refusing his final instructions 8 and 9 which defined criminal conversion as a lesser included offense of theft.

█ In determining the propriety of instructing the jury on a lesser included offense, a trial court employs a two-part test. The first part requires an examination of the statutes defining the greater and lesser offenses, together with the factual allegations in the charging information. The court then determines whether the lesser offense is "factually" included in the charging information, and alleges the commission of the greater or "inherently" included offense in the greater offense. The second part requires the court to determine whether, assuming an offense was committed, the evidence would, *prima facie*, warrant a conviction for a lesser included of-

fense, or could only warrant a conviction for the principal charge, in which case the lesser included offense instruction should not be given. *Henning v. State* (1985), Ind., 477 N.E.2d 547, 550; *Lawrence v. State* (1978), 268 Ind. 330, 375 N.E.2d 208, 212–213; *Roddy v. State* (1979), 182 Ind. App. 156, 394 N.E.2d 1098.

█ In this case, according to the wording of the charging information, the crime of conversion could be included within the elements of theft. *See Maisonet v. State* (1983), Ind., 448 N.E.2d 1052. The distinguishing factor between theft and conversion is the intent to deprive the true owner of the use or value of the stolen goods. Decker claims the State did not prove he had the requisite intent because there was no evidence of prior complicity on his part, any knowledge of what items Smith placed in the trunk or their origin, and he did not stand to gain from stealing the items. He also relies on the fact he was acquitted of the burglary charge.

These arguments do not support Decker's contention that the trial court was required to give included offense instruction. If he was not a participant or was present without knowledge or intent that the crime of theft was being committed, then it would follow he was not guilty of theft or conversion. The question here is whether there was probative evidence which put into conflict the distinguishing factor between theft and conversion, that is, the intent to deprive the owner of the use or value of the stolen goods. In *Swafford v. State* (1981), Ind., 421 N.E.2d 596, it was expressed by this court:

> If it is determined that the lesser offense is "included" within the greater crime charged, step 2 is triggered. It is designed to determine if the evidence warrants an instruction on the lesser and included offense. Generally, that determination hinges on whether a serious evidentiary dispute exists with respect to the element which distinguishes the greater and lesser offenses.

*Id.* at 603. *See also Hester v. State* (1974), 262 Ind. 284, 315 N.E.2d 351; *Tucker v. State* (1981), Ind.App., 419 N.E.2d 1355.

 The trier of fact may infer participation in criminal acts from a defendant's failure to oppose a crime, companionship with one engaged therein, and a course of conduct before, during, and after the offense which tends to show complicity. While the State must sustain its burden of proof on each element of an offense charged, such elements may be established by circumstantial evidence and the logical inferences drawn therefrom. *Harris v. State* (1981), Ind., 425 N.E.2d 154, 156; *Lisenko v. State* (1976), 265 Ind. 488, 355 N.E.2d 841, 843. The evidence clearly showed here that Decker took Smith to Horticulture Park, dropped him off and returned a little later. He gave Smith his keys and allowed him to put something in the trunk of his car. He drove Smith around in order to find Huff and was present when Huff paid Smith for the Weedeater and chain saw. He was with Smith at a bar when Huff's check was cashed. He then led Planchon and Smith back to Horticulture Park and fled before police officers could catch up with him. He also warned Planchon and Smith to leave the area because police were on the scene. This evidence clearly indicates an intention to steal the University's property and to permanently deprive them of it. The fact that Decker only aided in these acts does not relieve him of full responsibility as an accomplice. There is no serious dispute of any probative value in the evidence concerning Decker's intent to permanently deprive the University of the use and value of its property. The trial court properly denied these instructions.

## II

Decker next contends the trial court erred in denying his motion for discharge pursuant to Criminal Rule 4(C). That rule states:

(C) Defendant Discharged. No person shall be held on recognizance or otherwise to answer a criminal charge for a period in aggregate embracing more than one year from the date the criminal charge against such defendant is filed, or from the date of his arrest on such charge, whichever is later; except where a continuance was had on his motion, or the delay was caused by his act, or where there was not sufficient time to try him during such period because of congestion of the court calendar; provided, however, that in the last-mentioned circumstance, the prosecuting attorney shall file a timely motion for continuance as under subdivision (A) of this rule. Any defendant so held shall, on motion, be discharged ... (F) Time Periods Extended. When a continuance is had on motion of the defendant, or delay in trial is caused by his act, any time limitation contained in this rule shall be extended by the amount of the resulting period of such delay caused thereby. However, if the defendant causes any such delay during the last thirty (30) days of any period of time set by operation of this rule, the State may petition the trial court for an extension of such period for an additional thirty (30) days.

The dates which are important in resolving this issue are as follows:

1. Decker's petition for recusal of the prosecutor and its pendency between November 18, 1983 and December 1983;

2. Decker's failure to object to the July 30, 1984 continuance of the trial date;

3. Decker's failure to appear for trial on October 1, 1984;

4. Decker's re-arrest and reappearance in court on July 3, 1985;

5. Decker's failure, on July 17, 1985, to object to a new trial date setting of September 3, 1985;

6. Decker's motion to quash jury panel on August 30, 1985, and the court's *sua sponte* continuance of trial without date; and

7. the trial date on October 21, 1985.

The one year time limit to bring Decker to trial began to run on October 27, 1983, when the charging information was filed. Both Decker and the State agree that thirty-one (31) days, the time period between Decker's filing and the court's denial of his Petition for Recusal of County Prosecutor, November 18, 1983 through December 19,

1983, is attributable to Decker. They also agree the time period between October 1, 1984 and July 2, 1985, two hundred and seventy-four (274) days, is also attributable to Decker because he absented himself from the trial court's jurisdiction. Therefore, the one year time limit extended an additional three hundred and five (305) days, and the trial would have begun on or before August 28, 1985 under Criminal Rule 4(C). As noted above, however, the trial did not begin until October 21, 1985, and thus it is necessary to determine to which party the additional delays must be charged.

■■■ On July 20, 1984, the State, citing congestion on the court calendar, moved to continue the trial from the July 30, 1984 setting. The record reveals the parties appeared in court and the State's continuance was granted, resetting the trial for October 1, 1984, without objection from Decker. Congestion on the court calendar is a legitimate basis for extending the time periods of Rule 4. *Fortson v. State* (1978), 269 Ind. 161, 379 N.E.2d 147, 151. Furthermore, we have held that a defendant has a duty to alert the trial court when the trial date has been set beyond the proscribed limits of the rule. If a defendant does not object to the trial date at the earliest opportunity, he will be deemed to have acquiesced in the date. An objection must be lodged in time to permit the trial court to set the date within the one year period. *Thomas v. State* (1986), Ind., 491 N.E.2d 529, 531; *Randall v. State* (1985), Ind., 474 N.E.2d 76, 84. Thus, the time between July 20, 1984, and October 1, 1984, an additional seventy-three (73) days delay, is not chargeable to the State requiring discharge pursuant to Rule 4. The total of these delays would have extended the time limit under Criminal Rule 4(C) beyond the October 21 trial date. Accordingly, the trial court did not err in denying Decker's motion for discharge.

### III

Next Decker contends the trial court erred in failing to grant his motion to suppress his statement to police officers made at his home and later at police headquarters. He bases his claim on the fact he was not read his *Miranda* rights when the police questioned him at his home; this he claims caused his later statements to be "fruit of the poisonous tree." *See Wong Sun v. United States* (1963), 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441.

■■■ Decker correctly notes the *Miranda* decision delineates certain warnings of which an accused must be advised prior to any custodial interrogation. The procedural safeguards which keep this evidence from being admitted at trial apply only to custodial interrogations. *Minneman v. State* (1982), Ind., 441 N.E.2d 673, *cert. denied* 461 U.S. 933, 103 S.Ct. 2099, 77 L.Ed.2d 307. Custodial interrogation is questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way. *Johnson v. State* (1978), 269 Ind. 370, 380 N.E.2d 1236, 1240, citing *Oregon v. Mathiason* (1977), 429 U.S. 492, 97 S.Ct. 711, 50 L.Ed.2d 714. Also, *Miranda* warnings are not necessary where police are questioning in a general, non-accusatory investigation of a crime. *Johnson,* citing *Miranda v. Arizona* (1966), 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694.

■■■ The record discloses that on October 21, 1983, the day after the burglary, park detective Davis went to Decker's home to ask him about Kenneth Smith's role in the burglary. Davis was accompanied by three other officers and asked Decker if he would talk with him outside. Decker was informed that Smith and Planchon were arrested on burglary charges and that Smith had indicated he had been with Decker earlier in the evening.

Decker told Davis about the chain saw and Weedeater, which Smith had sold. He also stated he had nothing to gain from the sale of that property. Decker next informed Davis the property had been stored in his car trunk prior to its sale. Davis asked to see inside Decker's car trunk and Decker went into the house, obtained the trunk key and opened the trunk. Two gas

cans belonging to the University were removed.

Davis then asked Decker if he could meet him later at his office. This conversation lasted about ten minutes. No *Miranda* rights warnings were given to Decker at this time. Officers testified no one was close to Decker during the conversation, he was not threatened or promised anything, he was not restrained or touched in any way and he was not placed under arrest. Officers testified at trial that Decker was not yet a suspect in the crime at that time and contact with him was part of their general investigation.

Later that morning, Decker and his wife went to the Purdue Police Department where he executed a rights waiver form and gave Davis a written statement outlining his participation in the incident. Decker does not claim the waiver of rights in the written statement was made involuntarily or without an intelligent understanding of his rights. He claims the second statement was improperly taken because "the cat had been let out of the bag." *See United States v. Bayer* (1947), 331 U.S. 532, 67 S.Ct. 1394, 91 L.Ed.2d 1654 and *Johnson*, 380 N.E.2d at 1241. He claims admission of the gas cans was improper as "fruit of the poisonous tree." *Wong Sun*, 371 U.S. at 488, 83 S.Ct. at 417, 9 L.Ed.2d at 455. The court correctly denied motions to suppress since, as previously noted, *Miranda* does not apply to questioning by police in the course of a non-coercive, non-accusatory investigation of a crime. There was no compelling atmosphere or environment in the ten-minute discussion on Decker's front porch. He freely talked to them, cooperated with them by getting his keys and opening the trunk of his car, and following that, voluntarily went to the police station to discuss this further with them. See generally, *Johnson*, 380 N.E.2d 1236, and *George v. State* (1979), Ind.App., 397 N.E.2d 1027. Decker presents no error on this issue.

## IV

Decker also claims the trial court erred in not considering the ameliorative provisions of IC 35-50-2-8(c) when he was sentenced, thereby violating his equal protection and due process rights.

■ IC 35-50-2-8(c) as amended gives a trial court discretion to reduce the presumptive thirty (30) year enhancement on an habitual offender finding when the felony to which the enhancement applies is a class D felony. In *Hensley v. State* (1986), Ind., 497 N.E.2d 1053, this court held that persons charged with being an habitual offender before September 1, 1985 may not be considered under the ameliorative provisions of the statute. In *Hensley* and again here, we find the legislative intent is clear on this point.

> The Legislature's intent is directly and clearly expressed. It is not uncertain or ambiguous as to its application. It excludes any felonies committed before the effective date of September 1, 1985. The Legislature's intent therefore does not require any construction or interpretation. It, in fact, places us under a duty to enforce the statute according to its obvious meaning. [Citations omitted].

*Id.* at 1055.

■ Decker's claim that his thirty (30) year sentence enhancement under the old habitual offender statute violated his rights under the Equal Protection clause of the 14th Amendment, U.S. Constitution has been decided adverse to his contentions in *Vicory v. State* (1980), 272 Ind. 683, 400 N.E.2d 1380. We find no error here.

## V

Decker next argues the trial court erred in giving State's instruction No. 3. This instruction reads:

> The presence of a person at the scene of the commission of a crime and companionship with another person engaged in the commission of the crime and a course of conduct before and after the offense are circumstances which may be considered in determining whether such person aided, induced, or caused the commission of such a crime.

■ Decker claims the instruction places undue emphasis on certain evidence

and is an argumentative presentation of the "aiding and offense" statute. However, as Decker himself notes, this court in *Fortson v. State* (1979), 270 Ind. 289, 385 N.E.2d 429, 434, found this to be a correct statement of the law. The purpose of the instruction is to prevent jurors from failing to consider acts committed before and after a crime is committed upon the erroneous belief the law prevents it. *Id.* See also *Hoskins v. State* (1982), Ind., 441 N.E.2d 419, 425, and *Green v. State* (1983), Ind., 451 N.E.2d 41, 44. The court did not err in giving this instruction.

## VI

Decker also contends the trial court erred in permitting a State's witness to testify as an expert and give her opinion regarding fingerprint identification. He claims the State did not lay a sufficient foundation for her testimony.

The trial court has wide discretion to determine when a witness is qualified to give an expert opinion. The court's decision will not be disturbed unless an abuse of discretion is shown. *Knapp v. Ellyson Realty Co.* (1937), 211 Ind. 180, 5 N.E.2d 973, 975; *Hill v. State* (1984), 470 N.E.2d 1332, 1337. Decker does not claim the witness was unqualified as an expert. His claim is that she did not give sufficient details to support her conclusion that all fingerprints in question were Decker's. She did, however, testify that in making her comparisons she looks for similarities in patterns and certain identifying characteristics. She later stated on re-direct examination she did not, in comparing the fingerprints in issue, find any indications or characteristics on each individual print that did not match or indicate it was a different print. The witness had in fact compared the impression sets herself and found they all matched. The question of how many characteristics she determined matched was simply a matter of support for her conclusions and could have been reached by further examination. The testimony was properly admitted.

## VII

Decker lastly contends the evidence is insufficient to support his conviction, and therefore the court erred in denying his motion for a directed verdict.

The State presented substantial evidence of probative value to support Decker's theft conviction based on the accessory theory of liability. Decker drove co-defendant Smith to Horticulture Park, dropped him off, and returned some time later. He allowed Smith to put some items in the trunk of his car, and drove Smith to Huff's house. On their way over, Smith had Decker stop the car so he could put gasoline in it with a paper funnel. The two were nowhere near a gas station. At Huff's house, Decker was present when Smith sold the Weedeater and chain saw. Decker was at the bar when Smith cashed the check. Later, Decker agreed to show Smith and Planchon the way back to Horticulture Park and warned them to "get out of here" when he realized the police were investigating the original break-in.

When sufficiency of the evidence is raised on appeal, this court will not reweigh evidence or judge the credibility of witnesses. We look to the evidence most favorable to the State and any reasonable inferences to be drawn therefrom. If there is substantial evidence of probative value to support the verdict, we will not disturb it. *Alfaro v. State* (1985), Ind., 478 N.E.2d 670, 672. As shown, the evidence was sufficient to convict Decker for theft.

The trial court is affirmed.

SHEPARD, C.J., and DeBRULER and GIVAN, JJ., concur.

DICKSON, J., concurs in result without opinion.