**Hurley Eugene UNDERWOOD, Appellant,**

v.

**STATE of Indiana, Appellee.**

**No. 79S00–8609–CR–816.**

Supreme Court of Indiana.

Nov. 24, 1987.

Rehearing Denied Feb. 5, 1988.

**504**

Jay T. Hirschauer, Logansport, for appellant.

Linley E. Pearson, Atty. Gen., Cheryl L. Greiner, Deputy Atty. Gen., Indianapolis, for appellee.

GIVAN, Justice.

A jury trial resulted in the conviction of appellant of Attempted Rape While Armed With a Deadly Weapon and Criminal Confinement With a Deadly Weapon. Appellant received a sentence of forty (40) years for the attempted rape and four (4) years for the confinement, the sentences to be served concurrently.

The facts are: On October 16, 1984, at approximately 11:00 a.m., H.R. was jogging on South River Road just outside of West Lafayette, Indiana, when she saw appellant standing along the side of the road. She also noticed a brown Buick automobile parked near appellant.

Shortly after passing appellant she heard him running behind her. He grabbed her around the neck with his left arm, and at the same time held a knife to her face with his right hand. Appellant announced "you're coming with me now." The victim struggled against appellant but was unable to prevent him dragging her off the road into a wooded area. After dragging her about ten yards into the woods, he threw her on the ground and then sat on top of her. As she continued to struggle, he deliberately stabbed her in the right hand inflicting a severe wound that required three layers of stitches to close.

The victim continued to struggle and appellant struck her in the face with his fist blackening one eye and breaking several teeth. The victim heard a car approaching and feigned fainting in order to distract her attacker thinking she might thus escape and get the attention of persons in the passing automobile. When she sensed that appellant had relaxed somewhat, she jumped up attempting to escape; however, appellant grabbed her by the hair and the struggle continued. She attempted to bite appellant but discovered that her teeth had been broken.

Appellant attempted to pull down the victim's shorts. As he did so, she struck him in the groin with her fist, causing him to momentarily release her, allowing her to run back onto the road. She looked back to see if appellant was following her but saw that he was running in the opposite direction toward his automobile. He discarded his white T-shirt, which she had deliberately smeared with blood from her injured hand hoping that this might be a manner in which he could later be identified.

At that time, Mary Parker was driving her car along the road. She passed appellant as he was entering his automobile then saw the victim standing in the road. She asked the victim if that man had attacked her and she replied "yes." Parker told the victim she would follow appellant and get his license plate number. Parker pursued appellant at speeds in excess of eighty-five miles per hour until they reached the edge of town where a semitrailer pulled onto the road temporarily blocking appellant's progress. This allowed Parker to pull up

behind his car, obtain the license number, a detailed description of the car, and a description of appellant.

In the meantime, Ron Dye, a Parks Department employee, also came along the road, rendered first aid to the victim and took her to the hospital. With the information Parker furnished to the police officers, they were able to arrest appellant at his home. Both the victim and Parker separately identified appellant from a photographic array and a live lineup.

Appellant claims the trial court erred in denying a continuance. Appellant was represented first by private counsel, who first filed a continuance which was granted and filed a motion for discovery which was responded to by the State, listing twenty-eight separate witnesses, together with listings of evidence such as photographs, hair samples, blood samples, saliva samples and other scientific reports. The case was then set for jury trial on July 16, 1985. On June 13, 1985, appellant's attorney filed a motion to withdraw from the case. The court granted the motion and appointed the Tippecanoe Public Defender to represent the defendant.

The Public Defender filed his notice of appearance on the same day. On July 10, the Public Defender filed a motion for continuance stating that he had not had sufficient time to talk to the witnesses listed by the State. The trial court denied the motion for continuance. The jury was selected on July 16 and evidence was presented beginning on July 17. We note that the Public Defender had been attorney of record in the case for more than a month when the trial commenced. He had the benefit of the discovery motion which had been filed before his appearance in the case and had available the information which prior counsel had received from the State pursuant to said motion.

■ Appellant argues, and we concur, that if defense counsel is in fact not given sufficient time to prepare, the defendant is in effect denied counsel and such denial will constitute reversible error. *Downer v. State* (1982), Ind., 429 N.E.2d 953. However, a trial court is charged with the responsibility of expediting the business of the court. Continuances are not generally favored. The rights of the defendant and the public interest must be balanced. *Smith v. State* (1975), 165 Ind.App. 37, 330 N.E.2d 384. This Court will review the trial court only for an abuse of discretion. *Miller v. State* (1978), 267 Ind. 635, 372 N.E.2d 1168.

■ In the case at bar, appellant's attorney had not only had a full month to prepare for the case, but he also had the benefit of the preliminary work which had been done by his predecessor. At the time the trial court denied appellant's motion for a continuance, he still had six days to prepare for the trial. When we consider this, together with the fact that more than a year and a half had elapsed since appellant's arrest, we cannot say that the trial judge abused his discretion in refusing the continuance.

■ Appellant claims he was denied effective assistance of counsel. He observes that since the United States Supreme Court handed down *Strickland v. Washington* (1984), 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674, this Court has failed to find that any defense counsel has been incompetent. He suggests that if the *Strickland* standard is to have any meaning at all, then we should declare someone incompetent starting with this case. Since this case was briefed we have held counsel to be ineffective. *See Smith v. State* (1987), Ind., 511 N.E.2d 1042 and *Williams v. State* (1987), Ind., 508 N.E.2d 1264. He claims that appellant did not receive adequate counsel because his attorney did not have adequate time to prepare. As we have pointed out above, we will not override the trial court's decision that there was adequate time for preparation.

Appellant claims the record in this case demonstrates that his attorney was in fact unprepared; however, we have searched the record thoroughly and can find no such evidence. He states that "his court-appointed defense attorney was totally unfamiliar with the rules and procedures involving a felony case." He cites no specific

instance in this record which would demonstrate such a lack of knowledge nor do we find any.

He cites the defense counsel's final summation to the jury as "an excellent example of his ineffective and woefully deficient representation...." He then quotes from portions of counsel's final argument wherein counsel conceded there was proof of confinement, but there was no proof of an intent to rape. It is counsel's concession that a confinement occurred to which appellant counsel takes exception. In order to evaluate this situation, we have read the entire final summation of counsel and considered it in the light defense counsel found himself at the close of the evidence. Appellant was positively identified by two witnesses as the perpetrator of the crime. The victim received multiple injuries both from the knife wielded by appellant and from the blows of appellant's fists.

For all practical purposes, his chances of defending against the confinement charge were virtually nil. On the other hand, in spite of the nature of the attack, there was no evidence of any communication of intent to rape on the part of appellant nor had he made any move which could be construed as an attempt to rape while he had his victim on the ground. The victim testified that appellant attempted to pull her shorts down, but this was at a time when she was on her feet and about to escape from appellant and he grabbed hold of the bottom of her shorts.

Faced with this situation appellant's counsel obviously attempted a Mark Anthony-type speech to the jury wherein he chose to concede a much lesser offense, thus establishing credibility with the jury to bolster his argument that in following the rule of reasonable doubt the jury should find that appellant should not be convicted of attempted rape. Counsel was well within acceptable trial tactics in so proceeding.

In the face of the evidence presented in this case, counsel would have, in all probability, done nothing but irritate the jury if he had taken a hard position that his client was totally innocent of wrongdoing. Counsel tried to make the most of a bad situation. The fact that he did not succeed does not mean he did not make a good try.

Appellant further attacks his counsel in claiming that counsel advised him that he could not testify at his trial. This allegation was made by affidavit attached to the motion to correct error. The State did not see fit to contest this affidavit. In his affidavit, appellant stated, "I was denied the opportunity to testify at my own trial in that I told my attorney that I wished to testify on my own behalf. My attorney told me that I could not testify." The Indiana Constitution, art. 1, § 13 guarantees a defendant the right "to be heard by himself and counsel."

If we accept appellant's statement as true, we must also examine the context in which such advice was given. Again, counsel was faced with the facts of the case. He had a client who could neither read nor write. When first arrested, he had taken the position that he had not been on the road in question on that day. Yet two very strong witnesses positively identified him as being at the scene of the crime. Allowing him to take the witness stand to face the cross-examination of the prosecuting attorney had the potential for ending in a disaster. It was well within the realm of competence for appellant's attorney to be quite emphatic with appellant that he should not take the witness stand under the circumstances of the case.

There is absolutely nothing in this record to indicate that defense counsel was deliberately trying to deprive his client of any constitutional right. We do not view this situation as a denial of a right but rather as a choice of tactics by defense counsel supported by the record.

■ Appellant claims the trial court abused its discretion in sentencing him to a term of forty (40) years. He concentrates on the fact that in finding aggravating circumstances the trial court gave as its first reason: "[t]he victim was cut rather severely." Appellant takes the position that since the use of a deadly weapon was part of the charge, the court was not justified in also using it as an aggravating

circumstance. He cites *Townsend v. State* (1986), Ind., 498 N.E.2d 1198. In *Townsend*, this Court pointed out that "the mere fact which comprises a material element of a crime may not also constitute an aggravating circumstance to support an enhanced sentence, but the particularized individual circumstances may constitute a separate aggravating circumstance." *Id.* at 1201.

In the case at bar, the evidence shows that appellant not only used a deadly weapon and inflicted several minor injuries, but also deliberately stabbed the victim's hand while she was pinned to the ground. The judge gave as an additional aggravating circumstance "[t]he violence that was used." In addition to the use of the knife, appellant used his fists on the victim's face to the extent that he blacked one of her eyes and broke several of her teeth. We hold that the trial court was well within the standards set forth in *Townsend* that the "particularized individual circumstances may constitute a separate aggravating circumstance." *Id.* at 1201. We see no violation of the discretion of the trial court in sentencing appellant to forty (40) years. *Miles v. State* (1984), Ind., 468 N.E.2d 1040.

■ Appellant claims the verdict is not supported by competent evidence. In reciting the evidence, appellant claims that the victim cut herself on the hand when she grabbed the knife and that she cracked her teeth when she tried to bite appellant. He also correctly points out that he made no statement of his intent to rape the victim and that his only attempt to disrobe her was the grabbing of her shorts when she was trying to get away. He thus takes the position that the evidence is only sufficient to support a conviction of battery and is "simply insufficient to support a conviction of attempted rape."

First of all, it is totally unacceptable to charge the victim with cutting herself because she grabbed the knife held by appellant. Nor will we charge her with breaking her own teeth because she tried to bite appellant. There is no doubt that the evidence concerning the attempted rape is circumstantial; however, it was for the jury to weigh the pertinent facts above recited and to determine whether or not there was competent evidence beyond a reasonable doubt that appellant intended his attack to culminate in the rape of the victim. There are sufficient facts in this record to support such a conclusion. This Court will not reweigh those facts. *Alfaro v. State* (1985), Ind., 478 N.E.2d 670.

The trial court is affirmed.

SHEPARD, C.J., and DeBRULER, PIVARNIK and DICKSON, JJ.; concur.