Bernard P. FLINN, Appellant,

v.

STATE of Indiana, Appellee.

No. 49S00–8805–CF–507.

Supreme Court of Indiana.

Nov. 27, 1990.

S. Sargent Visher, Choate Visher & Haith, Indianapolis, for appellant.

Linley E. Pearson, Atty. Gen., Gary Damon Secrest, Deputy Atty. Gen., Indianapolis, for appellee.

GIVAN, Justice.

A jury trial resulted in the conviction of appellant of one count of Corrupt Business Influence, a Class C felony; seven counts of Theft, a Class D felony; and three counts of Unlawful Loan Brokering, a Class D felony. He was sentenced to enhanced terms of eight (8) years for the Class C felony count and four (4) years for each of the ten Class D felony counts, all terms to be served consecutively for a total executed sentence of forty-eight (48) years.

The facts are: Between 1982 and 1985, a number of people responded to a Yellow Pages advertisement for "Harvey Investment Co. Inc./High Risk Loans," which put them in contact with appellant, who represented himself as a loan broker. In late December of 1982, Granville Hall contacted appellant seeking financing to purchase a bowling alley for $200,000. While refusing to discuss the identity of his investors, appellant assured Hall that he could secure him a loan for a finder's fee of $1900. Hall paid appellant that amount and a brokerage agreement was executed, but a few days later appellant told Hall an additional $3500 was needed to secure the loan. Hall supplied the additional money. In February of 1983, appellant informed Hall he had secured his loan, provided Hall could come up with yet another $5000. Hall managed to borrow the $5000 and when he paid it to appellant, a new brokerage agreement was executed reciting an interest rate, monthly payment, and closing date of March 4, 1983. On that date, however, appellant could not be found and the closing for the loan fell through, as did the purchase of the bowling alley. Hall never received a loan nor a refund of any of his $10,400 from appellant.

Later in 1983, Norma Murrell was told by appellant that he was "one hundred per cent successful" in obtaining second mortgage loans, but after paying him a $300 broker's fee, she received neither a loan nor a refund. In 1984, Robert Moore needed a loan to buy a house. Appellant promised to buy the house and resell it to Moore on contract if Moore paid him $3400. Moore did so, but on the agreed "closing" date, nothing happened. The house eventually was sold to someone else. Appellant promised Moore a refund, but neither a loan nor a refund ever were forthcoming.

In late 1984 and early 1985, Troy Hale was attempting to buy a log home. He paid appellant $5000 to obtain financing, but on the scheduled "closing" date, appellant could not be found. When Hale finally was able to contact him, appellant said another $5000 was needed. Hale never received a loan nor a refund. In early 1985, Vickie Reynolds paid appellant $700 to obtain a $30,000 loan to expand her carpet business inventory. Claiming he had found investors, appellant promised Reynolds a $40,000 loan if she tendered an

additional $1300, which she did. She never, however, received either a loan or any refund.

Sally Nees Parton needed $8500 to retire an accelerated mortgage on her mobile home. On May 17, 1985 she borrowed $1000 and paid it to appellant for "collateral" upon his assurance he would obtain a loan within thirty days or refund her money. After thirty days passed with no financing from appellant, she demanded a refund but instead got only appellant's usual run-around. In July of 1985, Lisa Alderson contacted appellant seeking financing to purchase a tavern. Appellant said there would be no problem obtaining investors if she paid him $5000 in "earnest money," which she did. As with the other transactions, appellant explained to Alderson that if she backed out of the deal, she would lose the $5000, but if he could not find an investor, it would be refunded to her.

Over the next few weeks, appellant responded to Alderson's inquiries by claiming he "was working on it." Finally, appellant told her she needed to pay him $3000 more to secure the loan and if she did not, she would be backing out and would forfeit the $5000 already paid. When Alderson paid the additional $3000, appellant told her to proceed with closing on the tavern. No financing, however, was forthcoming from appellant, and when Alderson demanded a refund, he refused and maintained it was not his problem the tavern had been sold to someone else.

In August of 1985, Michael Welp went to appellant to finance the $13,000 purchase price of a mobile home. He paid $1000 in "earnest money" to appellant, who promised Welp that if the loan was not arranged within two weeks, or if the mobile home was sold to another, his $1000 would be refunded. After waiting over four weeks with no loan forthcoming, the owner sold the trailer to someone else. When appellant then refused to refund Welp's $1000, Welp threatened to call the police and to get a lawyer and sue. Appellant replied, "Do what you want; the law can't touch me."

On October 11, 1985, Sally Nees Parton contacted the Lawrence Police Department regarding appellant's activities. Pursuant to a search warrant, the records of Harvey Investment Co. were seized by investigators. The files relevant to this appeal contained the loan applications and brokerage agreements drawn up between appellant and his customers but no documents to indicate appellant had ever attempted to secure financing for his customers.

██ Appellant contends the trial court erred in denying his motions to dismiss the counts charging him with committing corrupt business influence and with unlawful loan brokering. He argues the Indiana Racketeer Influenced and Corrupt Organizations (RICO) statute, Ind.Code § 35–45–6–1 *et seq.*, is unconstitutionally vague and overbroad in that it fails to provide notice of precisely what conduct is prohibited. He points out that such vagueness violates due process, citing *Grayned v. City of Rockford* (1972), 408 U.S. 104, 92 S.Ct. 2294, 33 L.Ed.2d 222 for the proposition that a law must afford persons of reasonable intelligence the opportunity to know what is prohibited.

He maintains the statute is vague because the legislature, in specifying what may constitute a "pattern of racketeering activity," failed to define what it meant by two incidents of racketeering activity having "the same or similar" intent, result, accomplice, victim, or method of commission. He thus reasons that absent parameters to define "similar in what respect," prosecutors have virtually unlimited discretion to file a racketeering charge against anyone committing within a five-year period any two of the twenty-seven predicate offenses enumerated in the RICO statute.

In construing a statute, a court must start with the assumption that the legislative purpose is expressed by the ordinary meaning of the words used. *H.J. Inc. v. Northwestern Bell Telephone Co.* (1989), —— U.S. ——, 109 S.Ct. 2893, 106 L.Ed.2d 195. Clearly, any "person of reasonable intelligence" would understand that committing a series of thefts, one of the predicate offenses listed in the RICO statute, by

the repeated solicitation and retention of up-front money in exchange for false promises to secure or attempt to secure financing, would constitute repeated incidents of theft having "the same or similar" intent, method of commission, and result such as to amount to a "pattern" of such criminal activity. The statute as applied in the case at bar is not impermissibly vague.

Moreover, any danger that a racketeering conviction could result merely from the commission of two predicate offenses within a five-year period is obviated not only by the interrelatedness requirement of Ind. Code § 35–45–6–1 discussed above, but also by the requirement of § 35–45–6–2 that once a pattern of racketeering activity has been established, it must be connected to an interest in or control of real property or an enterprise, to constitute the offense of corrupt business influence. Here, that connection was shown by appellant's use of Harvey Investment Co., Inc. to perpetrate his thefts. The RICO statute is not impermissibly overbroad.

■ Appellant also maintains the statute is indefinite as to what constitutes a "violation" of the listed crimes for predicate offense purposes. He cites a representation made by the Indiana Attorney General in the case of *J.N.S., Inc. v. City of Indianapolis* (7th Cir.1983), 712 F.2d 303, that "violation" means "conviction," and this Court's holding in *4447 Corp. v. Goldsmith* (1987), Ind., 504 N.E.2d 559, *rev'd. on other grounds, Fort Wayne Books, Inc. v. Indiana,* 489 U.S. 46, 109 S.Ct. 916, 103 L.Ed.2d 34, that a predicate offense need not be a prior conviction. We note § 1 of the statute defines an incident of "racketeering activity" as "to commit, or attempt to commit, or to conspire to commit a violation, or aiding and abetting in a violation, of" any of the listed offenses. One thus is put on notice that he risks RICO prosecution by, *inter alia,* the *commission* of the listed predicate offenses; once committed, the perpetrator's chance of subsequent conviction for a predicate offense already has been taken. We thus find no vagueness defect in this aspect of the statute, and note besides that the trial court in the instant case instructed the jury that they must convict appellant of the predicate offenses charged before finding him guilty on the count of corrupt business influence.

Appellant also urges the RICO count should have been dismissed as defective because it charged the commission of numerous counts of criminal conversion, which is not listed in the statute as a predicate offense, as incidents of racketeering activity. However, this defect in the information was cured when it was amended to charge the predicate offenses as theft.

■ Appellant argues the counts of unlawful loan brokering should have been dismissed on five grounds. He first maintains the information charged him with knowingly engaging in loan brokering, while the conduct prohibited by the statute is the failure to register as a loan broker with the Indiana Secretary of State's securities commissioner. However, the statute, Ind.Code § 23-2-5-4, requires the following: "Any person desiring to engage or continue in the business of loan brokering shall apply to the commissioner for registration under this chapter," while § 23-2-5-16 provides, "A person who knowingly violates this chapter commits a Class D felony." A violation thus consists of the elements of (1) knowingly, (2) engaging or continuing in the business of loan brokering, (3) without having registered with the securities commissioner.

The counts of the information charging appellant with unlawful loan brokering were in the following form:

"The affiant aforesaid, upon his oath aforesaid, further says that BERNARD P. FLINN ... did, without being registered with the Indiana Securities Commissioner, knowingly engage in the business of loan brokering, by promising, in return for consideration, to procure a loan for ___ or to assist ___ in procuring a loan from a third party...."

It is apparent the information properly included all the statutory elements of the offense and thus was not defective.

■ Appellant argues the State was required to prove he was aware of a duty to register and refrained from doing so and

the trial court thus erred in reading to the jury the State's Tendered Instruction No. 1, which said that the State was not required to prove he knew he was violating the securities law nor that he had knowledge of the registration requirement. He cites from *Clarkson v. State* (1985), Ind., 486 N:E.2d 501, 506–07, that "where an offense consists of a violation of a statute the only intent necessary is the intent to commit actions proscribed by the statutes."

Appellant's assertions to the contrary, nothing in the statute requires knowledge of the existence of a duty to register. *Clarkson* holds that the State must prove intent to commit the prohibited actions and that "whether Appellant was aware of the Indiana securities laws is of no moment...." *Id.* at 507. It was not error to give the State's Tendered Final Instruction No. 1.

■ Appellant argues the loan brokering charges should have been dismissed because the statute, enacted in 1985, was aimed at him in particular and thus is unconstitutional under art. 1, § 9 of the United States Constitution as a bill of attainder. However, even assuming as true appellant's allegations that the statute was the product of a bill known as "the Bernard Flinn Bill" sponsored by the Indiana Securities Division with the purpose of putting him out of business, it does not qualify as a bill of attainder because he is not specifically named in the bill and it imposes no punishment absent a judicial trial. *See United States v. O'Brien* (1968), 391 U.S. 367, 88 S.Ct. 1673, 20 L.Ed.2d 672.

■ Appellant next maintains the statute denied him equal protection under the law "because it exempted the behavior of nearly every imaginable lender except" appellant. While the statute lists ten categories of persons not subject to the registration requirements, these exceptions all apply to persons whose conduct is otherwise regulated by governmental agencies, whose conduct generally falls outside the definition of loan brokering *per se*, or whose fee is wholly contingent upon successful procurement of a loan. Absent any implication of suspect classifications or

fundamental rights, appellant fails to make the clear showing of arbitrariness and irrationality required of an equal protection challenge to overcome the presumption of validity accorded to legislation. *See Hodel v. Indiana* (1981), 452 U.S. 314, 101 S.Ct. 2376, 69 L.Ed.2d 40.

■ Appellant's final challenge to the loan brokering statute is that it constituted a legal nullity at the time he was charged because the securities commissioner thus far had failed to promulgate regulations called for in the statute and necessary for its implementation, yet by the time of trial had adopted sixteen pages of such regulations. He argues his due process rights thus were violated.

As the State points out, however, the statute, Ind.Code § 23–2–5–11(a), provides that "[t]he commissioner may do the following: (1) Adopt rules under I.C. 4–22–2 to implement this chapter." Nothing in the statute requires the adoption of rules, much less as a prerequisite to its taking effect, especially in light of its emergency effective date of May 15, 1985. Appellant's duty to register was apparent absent any rules; we see no violation of due process in the statute's enforcement prior to the discretionary adoption of rules to further implement it.

Appellant's motions to dismiss the counts of corrupt business influence and unlawful loan brokering were properly denied.

Appellant contends the trial court erred in denying his pretrial motion to suppress evidence seized from his office pursuant to search warrants executed on October 22, 1985 and on September 3, 1986. Appellant argues the warrants were overbroad, lacked particularity, and did not restrict the searches to items related to matters set forth in the warrants' probable cause affidavits. He also argues the police went beyond the scope of the warrants as issued by seizing business records not covered by the warrants.

■ However, appellant never mentions with particularity what evidence obtained in the allegedly unlawful searches of his office was introduced at trial and admitted

to his prejudice over his objection. An adverse ruling on a motion to suppress preserves nothing for review; an objection at trial is required. *Perry v. State* (1986), Ind., 500 N.E.2d 1205. Moreover, failure to cite to locations in the record where evidentiary errors occurred at trial results in waiver. Ind.R.App.P. 8.3(A)(7); *Gossmeyer v. State* (1985), Ind., 482 N.E.2d 239. Appellant here has demonstrated no reversible trial error flowing from the denial of his motion to suppress evidence gathered as a result of the search warrants.

■ Appellant contends the trial court erred in denying his motion for continuance made shortly after his new trial counsel entered an appearance on his behalf. At the time his preceding counsel's motion to withdraw was granted on July 10, 1987, trial was set for September 14, 1987; appellant's new counsel appeared three days later. On July 31, 1987, he moved for a forty-five day continuance which was denied two weeks later. Appellant argues the sixty days between new counsel's appearance and the trial date was insufficient preparation time in light of counsel's need to familiarize himself with thousands of documents and various pending motions and to argue those motions at the hearings thereon.

Whether to grant a continuance lies within the trial court's discretion, and clear abuse of that discretion must be demonstrated for reversal. *Baxter v. State* (1988), Ind., 522 N.E.2d 362. Counsel's available preparation time here was twice the thirty days found sufficient in *Clark v. State* (1989), Ind., 539 N.E.2d 9 and in *Underwood v. State* (1987), Ind., 515 N.E.2d 503. As in *Underwood,* counsel here had the benefit of the trial preparation done by his predecessor, who had been working on appellant's defense for sixteen months since entering his appearance in March of 1986. At any rate, appellant fails to explain how he would have benefitted from an additional forty-five days; such a showing of prejudice is necessary to demonstrate an abuse of discretion. *Clark, supra.* The denial of appellant's final motion for continuance was not error.

■ Appellant contends the trial court erred in denying his request to reopen his case after he had rested his defense. Upon initially opening his case, appellant called Herbert Blaine, at one time an associate of appellant, as his first witness. At that time, the State alerted the trial court to the potential of self-incrimination by Blaine on cross-examination. With the jury absent, the court advised the witness of his Fifth Amendment rights. Blaine next consulted with appellant's counsel, who then withdrew him as a witness.

After consulting with his own attorney, appellant now claims, Blaine informed appellant he would be willing to testify. Appellant claims that after the close of the defense case, just before final arguments, he sought to reopen his case to present Blaine's testimony, and the motion was denied. However, the record does not support this claim. Appellant maintains his Sixth Amendment right to present witnesses was violated and argues that because there would have been no prejudice to the State by reopening his case, the trial court's refusal to allow it was an abuse of discretion, citing *Flynn v. State* (1986), Ind., 497 N.E.2d 912.

The record reveals, however, that appellant sought to reopen his case only for Blaine to testify that he had been intimidated by the prosecution so as to make a record for appeal purposes. Defense counsel made an offer of proof that Blaine would testify he had been threatened by the trial prosecutor in a telephone conversation prior to the trial. Nevertheless, appellant made no motion for mistrial nor requested any other form of relief at trial from the alleged prosecutorial misconduct and thus presents no reviewable error in this regard.

The record in fact shows appellant made no offer of proof as to what Blaine's original testimony germane to appellant's defense would have been, nor did he seek to reopen his case to present such testimony by Blaine. *See Wiseheart v. State* (1986), Ind., 491 N.E.2d 985. We thus can find no prejudice flowing from the refusal to reopen the case for the purpose alleged by

appellant in his brief, because it was never requested. We find no error here.

■ Appellant contends the trial court erred in considering improper and inaccurate information in rendering an enhanced sentence. At the sentencing hearing the State presented Ruth Trees, a real estate broker, who testified she and some of her clients recently had been fleeced by appellant in a manner similar to the instances involved in the case at bar. On cross-examination, Mrs. Trees denied she had ever committed or been convicted of any felonies. Appellant asserts in his brief that she was even then facing pending charges of theft, perjury, and defrauding a financial institution and that she was convicted of those offenses soon after appellant's sentencing. Nevertheless, an examination of the transcript shows that her replies, strictly speaking, were accurate. Moreover, as pointed out by the trial court during the post-trial sentence reduction hearing, appellant presents nothing to show her testimony was false regarding his activities.

■ Appellant argues the trial court also improperly considered that he had been charged initially with a thirty-three count indictment, which was winnowed down to eleven counts by the State's dismissal of sixteen counts of theft and six counts of unlawful loan brokering. A sentencing court, however, is not limited to considering only convictions in assessing a defendant's criminal history; pending charges and uncharged crimes may be considered. *Jordan v. State* (1987), Ind., 512 N.E.2d 407.

■ Appellant also challenges the trial court's reliance upon a prior conviction of conspiracy to commit theft by deception which subsequently was reversed on appeal due to insufficiency of the evidence. The trial court acknowledged this conviction had been reversed and went on to focus on appellant's assurances to the sentencing court in the prior case that he would "get out of it altogether" in assessing appellant's expressions of remorse in the instant case. As in *Walker v. State* (1987), Ind., 503 N.E.2d 883, 888, "[t]he record clearly shows that the trial court was well aware that such sentence had been set aside.... This was a legitimate recitation of the history of that case and was entirely proper for the trial court's consideration in the sentencing of" appellant.

As appellant points out, a defendant is entitled to a sentence based upon accurate information. One based upon materially untrue assumptions violates due process. *Gardner v. State* (1979), 270 Ind. 627, 388 N.E.2d 513. Because we find no materially untrue information relied upon by the trial court, we see no error in the court's use of the circumstances discussed above.

■ Appellant contends his sentence is erroneous because the trial court refused to excise "untrue, prejudicial and misleading" statements from the presentence investigation report. The report included statements from one of the investigating officers to the effect that appellant was not "sick" but rather knew his actions were wrong and statements from various victims reflecting their feelings essentially that appellant had preyed upon them with no regard for the ruinous consequences of his depredations. Appellant argues such biased information was improperly prejudicial because it constituted hearsay and personal opinion. He also challenges the inclusion of remarks made by a victim of one of the dismissed counts, arguing that because no conviction resulted, that person did not qualify as an "immediate and actual victim of an offense" whose statement should be included in the report, citing *Wallace v. State* (1985), Ind., 486 N.E.2d 445, *cert. denied*, 478 U.S. 1010, 106 S.Ct. 3311, 92 L.Ed.2d 723.

*Wallace*, however, holds that because the victim impact requirements of the statute, Ind.Code § 35-38-1-9, were not intended to grant additional rights to defendants, the failure to comply strictly with the statute and include the victim's views on sentencing the defendant was not error absent a showing of prejudice. Moreover, § 9(c) of the statute dictates, and our cases hold, that the probation officer is given wide discretion to include in the presentence re-

port any matter which he believes is relevant to the question of sentence. *Id.;* *Lang v. State* (1984), Ind., 461 N.E.2d 1110. As noted above, uncharged crimes and those not resulting in convictions may be considered at sentencing. *Jordan, supra.* In light of the foregoing, and because appellant here was afforded the opportunity to review the report and respond to it, we do not find the presentence report improper or its contents unduly prejudicial.

▉ Appellant contends his sentence totalling forty-eight (48) years, representing the maximum possible term for his convictions, is unjustifiably severe in light of the set-aside of his sole prior felony conviction and in light of the alleged errors hereinbefore discussed. He cites *Fointno v. State* (1986), Ind., 487 N.E.2d 140 for the proposition that our criminal justice system must afford an opportunity for rehabilitation where reasonably possible, and argues that the length of his sentence will prevent him from returning to a normal life.

On review, we will not disturb a sentence authorized by statute unless it is manifestly unreasonable in light of the nature of the offense and the character of the offender; a sentence is not manifestly unreasonable unless no reasonable person could find it appropriate to the particular offense and offender. Ind.R.App.Rev.Sen. 2 (see, now, Ind.R.App.P. 17(B)); *Rowe v. State* (1989), Ind., 539 N.E.2d 474. In imposing the aggravated sentence in the case at bar, the trial court detailed the repeated instances of gross deception perpetrated by appellant, that he apparently never sought to follow through on any of the transactions, that he had a large number of default judgments pending against him, that he continued his deceptive activities not only after having complaints lodged against him but even after the filing of the instant charges, that aside from his victims he had lied to the Attorney General's Office and to the probation officer during his presentence interview, and that he had reneged on his promise made at the time of his prior sentencing.

The trial court also mentioned that imposition of a reduced sentence would depreciate the seriousness of the crimes and that some of the victims had been over 65 years of age. The trial court concluded that the history and scope of appellant's criminal activities revealed little chance for rehabilitation such that the maximum sentence was called for in order to prevent recurrence of his activities. In light of all these factors, a reasonable person could find appellant's sentence appropriate. The trial court did not err in imposing it.

▉ Appellant contends the evidence is insufficient to support his convictions. He maintains that he never guaranteed to find any of his clients a loan, and that several of the victims signed contracts specifying he was to retain the "brokerage fee" whether a loan was obtained or not obtained and that it constituted the only agreement between them. He thus reasons the element of unauthorized control over those clients' funds was not proved, the theft convictions are unsupported, and the corrupt business influence conviction depending on them consequently cannot stand.

The statute defining the offense of theft, Ind.Code § 35–43–4–1, reads in pertinent part as follows:

> "(b) Under this chapter, a person's control over property of another person is 'unauthorized' if it is exerted:
>
> \*     \*     \*     \*     \*     \*
>
> (4) by creating or confirming a false impression in the other person; [or]
>
> \*     \*     \*     \*     \*     \*
>
> (6) by promising performance that the person knows will not be performed."

From the evidence adduced at trial, the jury was entitled to find that appellant had violated subsection 1(b)(6) in each instance by promising to attempt to secure financing while knowing no such attempt would be made, and that subsection 1(b)(4) had been violated as well in several instances by appellant's assurances that the loan transactions were well underway and required only an additional deposit to be consummated. The evidence was sufficient to prove the "unauthorized control" element

of theft and thus to support the theft and corrupt business influence convictions.

The trial court is affirmed.

SHEPARD, C.J. and PIVARNIK, J., concur.

DeBRULER, J., concurs and dissents with separate opinion in which DICKSON, J., concurs.

DeBRULER, Justice, concurring and dissenting.

I would reverse appellant's three convictions under Counts IX, X, and XI for the offense of failing to apply for registration, but affirm the rest. I.C. 23-2-5-4 provides:

> Any person desiring to engage or continue in the business of loan brokering shall apply to the commissioner for registration ...

I.C. 23-2-5-16 provides:

> A person who knowingly violates this chapter commits a Class D felony.

I read these sections of the statute as making knowledge of the duty to apply an element of any offense based upon them. That knowledge must be proved to exist at the time of the conduct alleged in the charge. Counts IX, X, and XI, based upon these two sections, relieved the State of the obligation to prove this required element, and it was error to refuse to dismiss the counts on motion of the defense.

DICKSON, J., concurs.