Marlo A. STANEK, Appellant–Defendant,

v.

STATE of Indiana, Appellee–Plaintiff.

No. 71A03–9102–CR–33.

Court of Appeals of Indiana, Third District.

March 11, 1992.

Anthony V. Luber, South Bend, for appellant-defendant.

Linley E. Pearson, Atty. Gen., Preston W. Black, Deputy Atty. Gen., Office of Atty. Gen., Indianapolis, for appellee-plaintiff.

GARRARD, Judge.

The facts most favorable to the judgment disclose that the events in issue began at approximately 2:30 a.m. on January 19, 1990. St. Joseph County police officers observed a speeding automobile. When the police officers stopped the automobile, they observed the defendant, Marlo Stanek (Stanek), the driver of the car, switch places with the back seat passenger. It was determined that Stanek's driving privileges had been suspended for life. He was arrested. In a two count information the State charged him with Operating a Motor Vehicle While Privileges are Forfeited for

Life, a Class C felony.[1] As a second count, the state charged Stanek under the Habitual Offender statute.[2] A jury convicted Stanek on both counts.

*Issues.*

Stanek raises seven issues:

1. Did the trial court err in denying Stanek's motion for continuance to permit the completion of post conviction challenges to his prior convictions?

2. Was the imposition of a twenty-four year term of incarceration on Stanek for his conviction as an habitual traffic violator enhanced as an habitual offender cruel and unusual punishment disproportionate to the nature of the offense?

3. Did the trial court err in finding that the enhanced penalty as an habitual offender was not suspendible?

4. Did the trial court err in refusing Stanek's offer into evidence of his driving record, State's Exhibit 1, for use in final argument for jury nullification?

5. Did the trial court err in publishing portions of Stanek's driving record, State's Exhibit 1 and 1.1A, over objections that they were irrelevant and at variance from the charge?

6. Did the trial court err in permitting the State to introduce evidence concerning an advisement of guilty plea consequences made to Stanek in a different matter and prior to the case specified in the charge herein?

7. Was there sufficient evidence of substantial probative value from which the jury could find Stanek guilty beyond a reasonable doubt?

*Discussion*

I. Motion for Continuance.

 Stanek's pre-trial motions for a continuance were denied. The basis of his motions was to await the completion of his post conviction challenges of his previous guilty pleas from the two prior unrelated felony convictions that were the predicate offenses for the Habitual Offender charge. It is within the sound discretion of the trial court to grant or deny a continuance. Stanek must demonstrate a clear abuse of that discretion in order to receive a reversal. *Flinn v. State* (1990), Ind., 563 N.E.2d 536, 543. A showing of prejudice is necessary to demonstrate an abuse of discretion. (Citation omitted). *Id.*

Stanek argues that when the court in *Lock v. State* (1975), 264 Ind. 25, 338 N.E.2d 262, 264 wrote that "if appellant's [prior convictions] rest upon invalid pleas of guilt, he should be afforded the opportunity to so demonstrate ...," it created a rule whereby he should have been granted a continuance in order to await the outcome of the post-conviction relief challenge to his prior felony convictions. We disagree. In *Lock*, the defendant's petition for permission to file a belated motion for a new trial and motion to correct errors had been denied. No such loss of opportunity has been visited upon Stanek by the court not granting a continuance in the case at bar. We agree with the trial court that if the challenges prove successful, the predicate felonies would no longer be available to support the habitual offender conviction and the enhanced sentence should be vacated.[3] Record at 28 and 267. The trial court merely refused to await the results of Stanek's appeal and proceeded upon the criminal charges at hand. We find no abuse of discretion in the court's action.

II. Cruel and Unusual Punishment.

 Stanek argues that the imposition of a twenty-four year sentence is cruel and unusual punishment disproportionate to the nature of his offense of Operating a Motor Vehicle While Privileges are Forfeited for Life. He contends the sentence violates Indiana and United States constitutional

---

1. This charge was brought under IC 9–12–3–2. That section has since been repealed by P.L. 2–1991, SEC. 109. The new section is now IC 9–30–10–17, as added by P.L. 2–1991, SEC. 18.

2. IC 35–50–2–8.

3. Stanek's post-conviction relief had been denied at the trial court level. Record at 662.

guarantees.[4]

Stanek acknowledges that we are not required under the U.S. constitution to conduct an extensive proportionality review. *Taylor v. State* (1987), Ind., 511 N.E.2d 1036, 1039. Our state constitution, however, mandates that sentences be proportioned to the nature of the offense. *Id.* Our analysis of proportionality in the habitual offender context has two parts. We judge the "nature" and gravity of the present felony and then we examine the "nature" of the prior felonies. *Id.*

Stanek's present felony was a Class C felony. IC 9–30–10–17, formerly IC 9–12–3–2. There are substantial antecedent events that must occur before one has his driving privileges revoked for life. The presumptive sentence for Class C felonies is four years, with not more than four years added or two years subtracted for aggravating or mitigating circumstances, respectively.[5] Stanek might readily have been sentenced to eight years on this offense due to his criminal history. The legislature, in assigning Class C felony status to this crime, surely viewed these circumstances as fairly egregious in nature. *See Mills v. State* (1987), Ind., 512 N.E.2d 846, 849 ("As the principal felony becomes more egregious, satisfying the proportionality requirement of the Indiana Constitution requires less of the prior convictions.")

Next we examine the "nature" of the earlier crimes. *Taylor, supra,* 511 N.E.2d at 1039. Stanek's previous felonies reflect a person who, when not incarcerated, continues to commit the crime of operating a motor vehicle while his privileges are suspended. The two predicate felonies both involve Stanek's driving while suspended. The first, a Class D felony, resulted from his pleading guilty to Operating a Motor Vehicle While Suspended as an Habitual Violator of Traffic Laws on October 7, 1987. The second, a Class C felony, resulted from a guilty plea to a charge of Operat-

ing a Motor Vehicle as an Habitual Violator of Traffic Laws After Having Forfeited for Life His Privilege to Operate a Motor Vehicle on November 1, 1988. Additionally, the presentence report, among other driving related infractions, discloses three earlier "driving while suspended" events. Record at 82. We see a pattern of criminal activity unbroken by short-term incarceration. Stanek's twenty-four-year "sentence is not disproportionate because of his inability to control his criminal habit." *Id.*

### III. Suspension of Enhanced Sentence.

[5] Stanek contends that the trial judge erred in holding that he lacked the authority to suspend all or part of the enhanced portion of his twenty-four-year sentence.

When Stanek's sentence was enhanced under the Habitual Offender statute, the penalty was for the last felony he committed. The enhancement was for that Class C felony and no other. *See State v. Williams* (1982), Ind., 430 N.E.2d 756, 758.

Indiana's statute provides the trial court with discretion to suspend a sentence on Class C felonies only if more than "seven (7) years have elapsed between the date the person was discharged from probation, imprisonment, or parole, whichever is later, for a prior unrelated felony conviction and the date the person committed the Class C felony for which the person is being sentenced." I.C. 35–50–2–2(b)(2). Under these circumstances the trial court "may suspend only that part of the sentence that is in excess of the minimum sentence." I.C. 35–50–2–2(b). Less than seven years had elapsed between Stanek's prior unrelated felony incarceration; therefore, the trial court had no authority to suspend any portion of his enhanced sentence.

### IV. Driving Record Evidence for Use in Final Argument for Jury Nullification.

[6] During the trial upon the Habitual Offender count, Stanek moved to introduce

---

4. The Eighth Amendment of the United States Constitution declares: "Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishment inflicted." Article 1, Section 16 of the Indiana Constitution

goes further and additionally declares: "All penalties shall be proportioned to the nature of the offense."

5. IC 35–50–2–6.

into evidence a certified copy of his driving record. Portions of the record had been previously published to the jury by the State in the trial upon Count I, the Class C felony charge. In response to the State's relevance and materiality objections, defense counsel argued that the evidence was necessary so that the jury could carry out its function under Article 1, Section 19 of the Indiana Constitution.[6] The trial court ruled that the evidence was immaterial and irrelevant. *See* Record at 603–607.

Stanek asserts that he was attempting to show the jury that his driving record was not bad and his conduct did not deserve an enhanced sentence under the Habitual Offender statute. He contends that the evidence was material and relevant because the jury should have the right to determine that legal issue.

The admissibility of evidence falls within the trial court's sound discretion. We will reverse only upon a showing that the trial court abused its discretion. *Best v. State* (1982), Ind.App., 439 N.E.2d 1361, 1365. To be material, Stanek's driving record had to be offered to prove a matter in issue and, to be relevant, it must be material and have probative value. If the driving record were to be of probative value it had to have "any tendency to make the existence of any fact that [was] of consequence to the determination of the action (i.e., any material fact) more or less probable than it would be without the evidence." *Henson v. State* (1989), Ind., 535 N.E.2d 1189, 1191. [Internal citations omitted.] The matter at issue in the Habitual Offender phase of the trial was whether Stanek's sentencing status should be that of a habitual offender. *Mers v. State* (1986), Ind., 496 N.E.2d 75, 81.

Stanek took exception with the trial court's statement that "[t]he law does not recognize that a jury can ignore the law and operate to nullify." Record at 604. Because the jurors are left to determine the law, it does not mean that "they have the right to make, repeal, disregard, or

ignore the law as it exists." *See Johnson v. State* (1988), Ind., 518 N.E.2d 1073, 1076. In the habitual offender phase of a trial the jury involves itself with the ultimate issue of fact: "whether based on these three felonies, [Stanek's] sentencing status should be that of a habitual offender." *Mers*, 496 N.E.2d at 79. Once it determines this ultimate issue of fact, it properly does not concern itself with the application of the law to that fact.

We therefore find that as offered, Stanek's driving record was irrelevant and immaterial in the habitual offender phase of his trial. There was no abuse of discretion by the trial court in not allowing Stanek to admit it into evidence.

## V. Driving Record as Evidence in State's Case in Chief: Irrelevant and at Variance with Charge.

[7] The State had the burden to prove beyond a reasonable doubt that Stanek operated a motor vehicle while knowing his driving privileges had been forfeited for life. *See* I.C. 9–30–10–17. Stanek argues that for the State to meet its burden, it must assert the original Class D felony conviction that gave rise to his life suspension rather than being able to assert, as it did in the information, the later Class C felony of Operating a Motor Vehicle While Privileges are Forfeited for Life. Stanek was convicted of this Class C felony on November 1, 1988 and it predated the similar charge in the case at bar. We agree with the trial court. The Class C felony of Operating While Privileges are Forfeited for Life has, as a necessary element, that a person has a suspension for life. The life suspension was not necessarily generated by the Class C felony, but the forfeiture is a continuing process. "It continues as long as the forfeiture is in effect." Record at 420. A valid Class C felony conviction of Operating While Privileges are Forfeited for Life is relevant and probative evidence of the existence of the material fact, *i.e.*, life forfeiture of driving privileges.

6. "In all criminal cases whatever, the jury shall have the right to determine the law and the facts." Ind. Const., Art. 1, § 19.

Stanek's variance argument is grounded upon our accepting his contentions that the State was forced to assert the original Class D felony that gave rise to the life forfeiture of his driving privileges. In light of the above discussion, we see no variance in the charges alleged and their grounds and what the State was to prove at trial.

■ Stanek took exception with the admission of Exhibit 1.1A. His objection was based upon variance grounds. The exhibit disclosed that Stanek's driving privileges had been suspended as of 11/20/87, the date of the Class D felony referred to above. The testimony of the deputy prosecutor was to the effect that he had informed Stanek that his driving privileges were suspended for life. We note, however, that upon cross-examination of the deputy prosecutor, it was counsel for Stanek who elicited from the witness that he had given Stanek advisements as to the consequences of a plea agreement in 1987. State's exhibit 2, admitted without objection, was a certified copy of the docket sheet from Stanek's prior Class C felony (Cause number 00555). This contained information about the December 6, 1988 suspension and its antecedent events. These two items of evidence have the same probative effect as the information in Exhibit 1.1A. There is, therefore, no reversible error. *See Fozzard v. State* (1988), Ind., 518 N.E.2d 789, 792.

## VI. Deputy Prosecutor's Testimony That He Advised Stanek of Life Forfeiture.

■ The admissibility of evidence on relevance grounds is left to the sound discretion of the trial court. *See Best, supra.* The testimony that Stanek had been advised of the life forfeiture of his driving privileges was relevant to show Stanek's knowledge of the forfeiture. We find no abuse of discretion.

## VII. Sufficiency of the Evidence.

■ The review standard on claims of insufficient evidence limits our inquiry. "[W]e neither weigh the evidence nor resolve questions of credibility, but look only to the evidence and reasonable inferences therefrom which support the verdict." (Citation omitted). *Landers v. State* (1984), Ind., 464 N.E.2d 912, 916.

The St. Joseph County police officer testified that he witnessed Stanek driving a speeding automobile he had stopped. The deputy prosecutor testified that he advised Stanek that his driving privileges were forfeited for life. Certified court documents demonstrated that Stanek had been previously convicted for driving while his privileges had been forfeited for life. We find it reasonable for a jury to find Stanek guilty of Operating Motor Vehicle While Privileges are Forfeited for Life under I.C. 9–30–10–17.

Affirmed.

HOFFMAN, P.J., concurs.

SULLIVAN, J., concurs in part and dissents in part and files separate opinion.

SULLIVAN, Judge, concurring in part and dissenting in part.

The majority affirms an enhanced twenty-four-year sentence imposed for conviction of a Class C felony, Operating a Motor Vehicle While Privileges are Forfeited for Life. The twenty-year enhancement was given pursuant to I.C. 35–50–2–8, the habitual offender provision.

I concur as to Parts I, IV, V, VI and VII of the majority decision. I dissent as to Parts II and III and address myself to those matters in reverse order.

### III

### *Suspendibility of Habitual Offender Enhancement*

Under subsection (e) of I.C. 35–50–2–8 (West Supp.1991), the enhancement for a habitual offender status determination may never be less than five years to be added to the underlying sentence, i.e., subtraction of up to twenty-five years from the fixed enhancement term of thirty years if a period of ten years has elapsed between discharge from the last prior unrelated felony and the date of commission of the underlying felo-

ny. This being so, subsection (f)[1] of the provision must necessarily contemplate reduction of the enhanced portion of a sentence below the levels enumerated in the schedules of subsection (e). Were it otherwise, subsection (f) would be redundant. In my view, therefore, subsection (f) permits suspension of the enhanced portion of a sentence, so long as the enhanced portion is not reduced to less than a five year executed term of incarceration.

I reach this conclusion in light of, and not in disregard of, *Marsillett v. State* (1986) Ind., 495 N.E.2d 699. In *Marsillett*, our Supreme Court consolidated into thirteen issues some approximately thirty-nine matters. One of those issues involved Marsillett's contention that the record did not reflect whether the trial court considered as within its discretion that a portion of the thirty-year enhancement might be suspended. Our Supreme Court merely held that suspension of a portion was not authorized under then subsection (c), now subsection (e). The decision did not hold that suspension was impermissible under subsection (f).

## II

### *Enhanced Sentence as Disproportionate to Offense*

In *Mills v. State* (1987) Ind., 512 N.E.2d 846, the Court affirmed a thirty-two-year enhanced sentence but noted that "[a]s the principal felony becomes more egregious, satisfying the proportionality requirement of the Indiana Constitution requires less of the prior convictions." 512 N.E.2d at 849. In *Mills*, the underlying felony was theft of a vehicle and the prior convictions all involved unauthorized use or theft of vehicles. The Court found significance in the fact that the thefts were more egregious than the theft of gasoline in *Hensley v. State* (1986), Ind., 497 N.E.2d 1053, or the theft of $50 worth of spark plugs in *Taylor v. State* (1987) Ind., 511 N.E.2d 1036.

Conversely, in *Clark v. State* (1990) Ind., 561 N.E.2d 759, the defendant's drunk driving conviction was enhanced by thirty years pursuant to I.C. 35–50–2–8 because of a prior burglary and a prior theft conviction. The majority there concluded that "where there is no injury to person or property, [a thirty-year enhancement] is entirely out of proportion to the gravity of the offense." 561 N.E.2d at 766.

Similarly, in *Best v. State* (1991) Ind., 566 N.E.2d 1027, the defendant was convicted of two felonies, one of which involved driving under the influence. That conviction was enhanced by twenty years under I.C. 35–50–2–8. The prior felonies were theft, burglary, theft, and driving while an habitual traffic offender. In reducing the sentence from twenty-seven to seventeen years, our Supreme Court noted that the underlying felony "is not particularly aggravated ... [and] [t]he incident caused little damage to property or person." 566 N.E.2d at 1032.

Best's prior criminal record, however, was substantially more serious than that of the defendant in *Clark v. State, supra.* Best had some eighteen prior convictions, several of which involved offenses against property and endangerment to public safety. The Court therefore found it appropriate for the underlying felony to be enhanced to some degree but not by the twenty years ordered by the trial court. The decision then directed the enhancement be reduced from twenty to ten years. That holding was made notwithstanding a dissent which posited that drunken drivers pose a serious hazard to life and public safety. The same cannot be said with regard to operators such as Stanek, who are not physically or mentally disabled or incapacitated other than by the absence of formalized state authorization to drive a motor vehicle.

---

**1.** I.C. 35–50–2–8(f) reads as follows:
"(f) Notwithstanding the court's authority to reduce the additional fixed term of thirty (30) years imprisonment under subsection (e), if a person is found to be an habitual offender under this section, the court shall sentence the person to an additional fixed term of at least five (5) years imprisonment to be added to the term of imprisonment imposed under section 3, 4, 5, 6, or 7 of this chapter."

Here, none of the offenses involved equate with those present in *Mills, Hensley,* or *Taylor,* or even with those in *Clark* or *Best.* We should not affirm a more severe sentence with respect to Stanek. In light of the cases cited, and particularly *Best,* I would affirm the conviction but would remand for imposition of an enhanced sentence of not more than twelve years.